

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-30-1995

# Western United v Hayden

Precedential or Non-Precedential:

Docket 94-3548

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation
"Western United v Hayden" (1995). *1995 Decisions.* Paper 238.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/238

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 94-3548
_____

WESTERN UNITED ASSURANCE COMPANY

v.

DEBRA ANN HAYDEN; DAVID GERARD HAYDEN;
RELIANCE INSURANCE COMPANY;
UNITED PACIFIC LIFE INSURANCE COMPANY;

WESTERN UNITED ASSURANCE COMPANY
Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 93-01850)
_____

Argued:  March 9, 1995
Before:  HUTCHINSON, ALITO, and SAROKIN, <u>Circuit Judges</u>

(Opinion Filed:  August 30, 1995)
_____

GEORGE M. CHEEVER, ESQ. (Argued)
CATHERINE L. WELSH, ESQ.
KIRKPATRICK & LOCKHART
1500 Oliver Building
Pittsburgh, PA 15222

<u>Attorneys for Western United
Life Assurance Company, Appellant</u>

MARY REITMEYER, ESQ.
JOSEPH R. LAWRENCE, ESQ. (Argued)
1310 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

<u>Attorneys for Debra A. Hayden and
David G. Hayden, Appellees</u>

_____

1

ALITO, <u>Circuit Judge</u>:

This appeal concerns an adversary proceeding filed by Debra and David Hayden, who are the debtors in a Chapter 13 bankruptcy proceeding. The subject of the adversary proceeding is a prior transaction in which Debra Hayden, in return for a cash payment, purported to assign to Western United Life Assurance Company her right to receive certain future periodic payments. In the adversary proceeding, the Haydens maintained that these periodic payments belonged to the bankruptcy estate because Debra Hayden's transaction did not constitute an effective assignment. The bankruptcy court agreed and entered summary judgment in favor of the Haydens. The district court affirmed the bankruptcy court's order. We now reverse and remand for further proceedings consistent with this opinion.

I.

In 1984, Debra Hayden sustained injuries as a result of allegedly negligent medical treatment. App. 52. She subsequently filed a malpractice suit against the treating physicians, the hospital and their respective liability insurance company (collectively the "medical defendants").[0] <u>Id.</u>

---

[0]The settlement agreement to the malpractice action contains a provision proscribing the Haydens from publicizing the facts or terms of the settlement. The Haydens have moved this court to maintain the confidentiality of this agreement. We will therefore refer to the defendants only as the medical defendants.

3

In February 1988, Ms. Hayden settled her suit with the medical defendants.  Id.  She executed a settlement agreement that stated:

> For and In Consideration of the sum of three hundred ten thousand dollars ($310,000) to me paid in hand by [the medical defendants] . . . the receipt of which is hereby acknowledged,** I, being of lawful age, hereby fully and forever release, acquit and discharge the said [medical defendants] . . . from any and all actions . . . on account of any and all known and unknown injuries . . . sustained by me . . . as a result of medical treatment received by [me] from [the medical defendants].
>
> ** (and the payment of $290,000 to United Pacific Life Ins. Co. for the purchase of an annuity contract)

Western's Br. at Exhibit 1.  The medical defendants then entered into a qualified assignment and assumption agreement with Reliance Insurance Company ("Reliance").  In pertinent part, this agreement stated:

> Whereas, the Settlement Agreement provides for the [defendants] to make certain periodic payments to or for the benefit of [Ms. Hayden].
>
> Whereas, the [defendants] desires to assign to [Reliance] its liability to make such periodic payments pursuant to the conditions of Internal Revenue Code [§] 130(c) . . . .
>
> NOW, THEREFORE, . . . the parties hereto agree as follows:
>
> > 1.  Liabilities Assigned.  The [defendants] hereby assigns and [Reliance] hereby assumes all of the [defendants'] liability to make the periodic payments to [Ms. Hayden]. . . .
> >
> > 2.  Funding of Periodic Payments. [Reliance] may fund the periodic

4

> payments . . . by purchasing a
> "qualified funding asset" within the
> meaning of I.R.C. [§] 130(d), in the
> form of an annuity contract from United
> . . . . All rights of ownership and
> control of such annuity shall be vested
> in [Reliance]. However, for
> [Reliance's] convenience, [Reliance]
> directs United . . . to make the
> payments to . . . [Ms. Hayden] . . . .

Id. at Exhibit 2. With funds provided by the medical defendants, Reliance then purchased a $290,000 annuity from United Pacific Life Assurance Company ("United"). Western Life Assurance Co. v. Hayden, No. 93-1850, 94-517, 94-518, at 2 (W.D.Pa. Sept. 20, 1994); App. 53. The annuity provided for monthly payments of $2,159.37 for the longer of 30 years or the remainder of Ms. Hayden's life. App. 63. The annuity designated Reliance as the owner and Ms. Hayden as the payee. Id. at 60.

In January 1989, the Haydens were experiencing financial difficulties. In re Hayden, No. 92-2261, Adv. No. 92-0301, at 3 (Bankr. W.D.Pa. Oct. 13, 1993). To alleviate these difficulties, the Haydens contacted Donald Bach, who arranged for at least five loans in various amounts totalling more than $50,000. App. 53-54. In consideration for these loans, the Haydens agreed to pay back double the amount of the principal in 60 equal monthly payments. Western at 3.

Despite these loans, the Haydens continued to experience financial difficulties. In re Hayden at 4. In early 1990, Ms. Hayden asked Bach to consolidate the loans so as to reduce the monthly payments. App. 54. Bach advised Ms. Hayden

5

that although consolidation was not possible, he might be able to arrange for the purchase of the annuity contract. Id.

In July 1990, Bach contacted Western United Life Assurance Company ("Western") to inquire whether Western had an interest in purchasing Ms. Hayden's annuity. Id. Western indicated an interest. On July 24, 1990, Western prepared a letter from Ms. Hayden addressed to Reliance. Id. This letter stated that Ms. Hayden had entered into an arrangement with Western and that pursuant to this arrangement she had conveyed her rights under the settlement agreement, including her right to receive the monthly annuity payments. Id. at 77. The letter asked Reliance to request that United change the annuity beneficiary to Western and to send future payments directly to Western. Id.

On August 10, representatives of Reliance and Western spoke. Id. at 55. Reliance informed Western that it would not honor Ms. Hayden's request. Id. at 79. Reliance explained that it was the owner of the annuity and that Ms. Hayden had no assignable rights in the policy. Id. After subsequent discussions between Reliance and Western, the two settled on the following mutually acceptable method of executing the assignment. Although Reliance insisted that the checks remain payable to Ms. Hayden, it agreed to honor a request from Ms. Hayden to change irrevocably the address to which the checks were sent to that of Western. Id. at 81.

In September 1990, the parties executed a series of documents in an attempt to assign to Western Ms. Hayden's rights

6

to the monthly payments.[0] In pertinent part, Ms. Hayden executed a document entitled "Annuity (Payment) Assignment Agreement." The document stated:

> FOR VALUE RECEIVED . . . [Debra A. Hayden] does hereby assign, transfer, and set over to Western . . . all Assignor's right, title and interest in and to the periodic payments described below together with Assignor's existing rights and interest . . . in and to the following described annuity contract/policy and related release and/or settlement agreement . . . .

Western's Br. at Exhibit 5. The document then identified with specificity the monthly payments, the annuity contract, and the settlement agreement. Ms. Hayden also directed Reliance to have United irrevocably change the address to which the checks were sent to that of Western. Id. at Exhibit 4. Finally, because the annuity checks remained payable to Ms. Hayden, she executed an irrevocable special power of attorney empowering Western to endorse and cash the checks. Id. at Exhibit 6. In return, Western paid Ms. Hayden $178,395.63, of which $92,420.63 was used to satisfy the loans. App. 58; Western at 4. Pursuant to these arrangements, the monthly payments were received and deposited by Western from the end of 1990 until August 1992. App. 58.

On May 14, 1992, Debra and David Hayden filed a voluntary bankruptcy petition under Chapter 13 of the bankruptcy code. Western at 5. Subsequently, the Haydens filed a six-count adversary complaint against Western, United, and Reliance.[0] In

---

[0] Other documents included beneficiary consents by David Hayden and by Ms. Hayden's daughter and various option agreements. App. 90-93.

[0] Count I requested a determination of Western's secured status pursuant to 11 U.S.C. § 506 or an avoidance of a lien pursuant to

7

this complaint, the Haydens alleged that the September 1990 documents executed by Ms. Hayden did not create an effective assignment. Thus, the Haydens argued that the annuity checks were property of the estate and that the court should order Western to turn over these checks to the estate. Similarly, the Haydens maintained that Western was only an unsecured creditor of the estate for a sum equal to the value of its bargain with Ms. Hayden less any prepetition annuity checks it received and cashed.

The parties moved for summary judgment on the adversary complaint. In re Hayden at 1. The bankruptcy court entered partial summary judgment in favor of the Haydens.[0] Id. at 14. The court held that the documents executed by Ms. Hayden did not create an effective assignment and that the monthly annuity payments were the property of the bankruptcy estate. Thus, the court ruled that Western was an unsecured creditor and ordered Western to surrender the postpetition annuity payments to the Chapter 13 trustee. Id.

The bankruptcy court subsequently confirmed the Hayden's Chapter 13 plan. In pertinent part, the plan provided

11 U.S.C. § 522. Count II sought to void, under 11 U.S.C. § 552, any security interest asserted by Western in the annuity payments. Count III alleged that Western violated that automatic stay provisions of 11 U.S.C. § 362. Count IV sought, pursuant to 11 U.S.C. § 542, the turnover of the postpetition annuity payments received by Western on the ground that they were property of the bankruptcy estate. Count V maintained that by receiving the checks Western benefitted from a preference proscribed by 11 U.S.C. § 547. Finally, Count VI alleged that Reliance and United, in violation of 11 U.S.C. § 543, disbursed to Western funds belonging to bankruptcy the estate.
[0]The court made no determination regarding counts III and V.

8

that all monthly annuity payments from the commencement of the case to the date of consummation would be surrendered to the trustee for distribution to the creditors. Western at 5. For the first six months after consummation, the Haydens were to receive the monthly annuity checks, from which $870 would be given to the trustee for distribution to the creditors. Id. The remaining portion of the annuity checks for this six-month period, as well as the full amount of all subsequent annuity checks, was excluded as a payment reasonably necessary for the support of the debtor under 11 U.S.C. § 522(d)(10)(E). Thus, the effect of the bankruptcy court's ruling in the adversary proceeding and its approval of the plan was that the Haydens continued to receive the annuity payments while Western received only a small percentage of the sum it paid to Ms. Hayden for her purported assignment.

Western separately appealed to the district court the bankruptcy court's decisions to grant summary judgment and to approve the plan.[0] The district court affirmed the bankruptcy court's holding that the documents executed by Ms. Hayden failed to create an effective assignment. The district court focused on Ms. Hayden's rights under the annuity contract. It explained that because Ms. Hayden was not the owner of the annuity she did not possess the legal right to change the designated beneficiary of the annuity. Western at 8. Therefore, the court concluded, "it is a simple matter to conclude that she could not assign the

---

[0] Western also appealed a third bankruptcy court decision not relevant to this appeal.

9

right to receive the annuity payments . . . ." Id.  The district court also affirmed the bankruptcy court's confirmation of the plan.  Id. at 10.

Western then appealed both decisions to this court. The present appeal concerns only the bankruptcy court's ruling with respect to the adversary action.[0]  Western contends that it, rather than the Haydens' estate, possesses the right to receive the monthly payments.  Western believes that the district court improperly focused only on Ms. Hayden's rights under the annuity contract.  It argues that Ms. Hayden assigned all her rights under the annuity contract and settlement agreement and that these rights included the right to receive the monthly annuity payments.  The Haydens respond by arguing that Ms. Hayden could not have executed an effective assignment because she did not have any assignable rights under either document and that even if she did, Pennsylvania law prevented the assignment of these rights.[0]

II.

We exercise plenary review over an appeal from an order granting summary judgment.  Rosen v. Bezner, 996 F.2d 1527, 1530 (3d Cir. 1993).  We look to Pennsylvania law to determine whether

---

[0]Western filed two appeals with this court.  The present appeal, No. 94-3548, concerns only the adversary proceeding. Appeal No. 94-3549 challenges the confirmation of the plan.  In light of our holding in the present appeal, we need not, and do not, consider the merits of appeal No. 94-3549.

[0]Western raised several alternative arguments.  In light of our holding, we need not and do not reach these arguments.

10

the documents executed by Ms. Hayden constituted an effective assignment.[0]  Under Pennsylvania law, "when interpreting a contract a court must determine the intent of the parties and effect must be given to all provisions in the contract."  Dept. of Transp. v. Manor Mines, Inc., 565 A.2d 428, 432 (Pa. 1989)(citations omitted).  If a written contract is clear and unambiguous, then the court construes the contract as a matter of law by its contents alone.  Id.; Allegheny International v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424 (3d Cir. 1994). If, however, the contract is ambiguous, then "in order to ascertain th[e intention of the parties], the court may consider the surrounding circumstances, the situation of the parties, the objects they apparently have in view and the nature of the subject-matter of the agreement."  International Organization Master, Mates and Pilots of America, Local No. 2 v. International Organization Master, Mates and Pilots of America, Inc., 439 A.2d 621, 624 (Pa. 1981).

## A.

We begin our inquiry by considering whether the annuity assignment agreement executed by Ms. Hayden in September of 1990 created an effective assignment.  According to the language of that document, Ms. Hayden agreed to "assign, transfer, and set over to Western . . . all [her] right, title and interest . . .

---

[0] All parties agree that Pennsylvania law governs this case. We agree.  We note that the relevant documents were executed in Pennsylvania and that the Haydens reside in Pennsylvania.

11

in and to the . . . annuity contract/policy and related release and/or settlement agreement . . . ."  Western's Br. at Exhibit 5. We find that this language inescapably and unambiguously expresses an intent by Ms. Hayden to assign to Western all her rights under the annuity contract and the settlement agreement.

The Haydens argue that despite this clear language, the document is not an assignment.  Rather, they contend that the document is merely a contract to transfer funds to be received in the future.  Under the Restatement (Second) of Contracts § 330, a contract to make a future assignment of a right or to transfer proceeds to be received in the future is not an assignment.

Our review of section 330, however, convinces us that the September 1990 document created an effective assignment. Section 330 distinguishes between, on the one hand, an obligee's intention to bind himself contractually to make a future assignment and, on the other, an intention to make a present assignment.  See Restatement (Second) of Contracts § 330, comments a-b.  The former is merely a contract, but the latter is an assignment.  The test is whether the obligee manifests an intention to transfer present ownership of the right.  Id.; see also Melnick v. Pennsylvania Co. for Banking and Trusts, 119 A.2d 825, 826 (Pa. Super. 1956)(in banc)(finding that the statement "I . . . hereby authorize and empower you . . . to . . . assign" was not an assignment because "these words indicate[d] no present intent to transfer or divest oneself from the right to demand possession of the [subject matter of the agreement]."); Daymut v. Commonwealth Dept. of Public Welfare, 410 A.2d 1318, 1319 (Pa.

12

Cmwlth 1980)(finding document not to be an assignment because it did not "indicate a present intent of the obligor to divest himself of any right to demand possession of [the subject matter of the agreement].")[0]

In the present case, the document executed by Ms. Hayden used the present tense and stated that Ms. Hayden "does hereby assign . . . ." We believe that this language clearly indicates an intent to make a present assignment. Thus, we find that this document was intended to create an effective assignment and not a contract to make a future assignment. We conclude, therefore, that the September 1990 documents executed by Ms. Hayden created an effective legal assignment of Ms. Hayden's rights under the annuity contract and settlement agreement. This conclusion does not end our inquiry, however, because we must determine exactly what rights Ms. Hayden was empowered to assign under these two agreements. We next turn to this issue.

B.

To determine whether Ms. Hayden had assignable rights under the annuity contract or the settlement agreement, we must consider each of these documents. With respect to the annuity contract, Western concedes that Ms. Hayden did not have a legally assignable right under this contract.[0] Western's Br. at 15.

---

[0]Although Pennsylvania courts have not explicitly adopted § 330, we believe that Melnick and Daymut indicate that Pennsylvania does follow this section.

[0]Although Western concedes that Ms. Hayden did not have a legally assignable right, it argues that Ms. Hayden's assignment of her expectancy interest in the annuity payments is enforceable in

Western and the Haydens agree that Reliance is the undisputed owner of the annuity. Id. As owner, the annuity contract vests Reliance with the right to change the payee and to direct the annuity payments to whomever it desires. App. 65. Because Ms. Hayden did not have an enforceable right to remain as the annuity payee, Western concedes that she could not assign a right to receive those payments. Western's Br. at 15, 27. Thus, we consider Ms. Hayden's rights under the settlement agreement.

Western argues that under the settlement agreement Ms. Hayden had a legally assignable right to receive the monthly payments. Western interprets this agreement as requiring Reliance, as the medical defendants' assignee, to pay Ms. Hayden the periodic payments from the annuity or from another source. Western's Br. at 29. Because the agreement created a right to receive the periodic payments, Western argues that Ms. Hayden could assign this right to receive the payments.

The Haydens, however, contend that Ms. Hayden had no assignable rights under the settlement agreement. Although their exact interpretation of the settlement agreement is unclear, they appear to argue that it required only the purchase of an annuity for the benefit of Ms. Hayden and nothing more. The Haydens reject Western's claim that the settlement agreement created a contractual obligation to make the periodic payments independent of the purchase of the annuity. Ms. Hayden, they observe, released the medical defendants from liability in consideration

---

equity. Western's Br. at 28. In light of our holding, we need not and do not consider this issue.

14

of a cash payment and "the payment of $290,000 to United Pacific Life Ins. Co. for the purchase of an annuity contract . . . ." Western's Br. at Exhibit 1. Thus, the Haydens maintain that because the settlement agreement did not require more than the purchase of an annuity and because the annuity was purchased, Ms. Hayden did not have any remaining assignable rights under the agreement.

We believe that the language of the settlement agreement is ambiguous and could support either of these interpretations. The ambiguity arises from the fact that the literal language of the agreement does not define the relationship between Ms. Hayden and the annuity. Thus, one can imply various relationships between them. We offer a few illustrative examples: (1) the medical defendants must purchase the annuity and assign it to Ms. Hayden; (2) the medical defendants must purchase the annuity and irrevocably name Ms. Hayden as payee; (3) the medical defendants must purchase the annuity and use it as security for their obligation to Ms. Hayden; or (4) the medical defendants must purchase the annuity but need not use it even as security for their obligation to Ms. Hayden.

Because the language of the settlement agreement is ambiguous, to determine the intent of the parties we look to the surrounding circumstances, the situation of the parties, and the objects they apparently have in view. International Organization Master, Mates and Pilots of America, 439 A.2d at 624. Western argues that when these factors are considered, it is clear as a

15

matter of law that the medical defendants, Reliance, and Ms. Hayden intended to enter into a "structured settlement" in accordance with §§ 104(a)(2) and 130 of the Internal Revenue Code ("I.R.C."), 26 U.S.C. §§ 104(a)(2), 130. Western further maintains that a structured settlement would require Ms. Hayden to retain a right to periodic payments under the settlement agreement. Thus, contends Western, the parties to that agreement intended to vest Ms. Hayden with an assignable right to receive the payments under the agreement. We consider each prong of Western's argument in turn.

Structured settlements are a type of settlement designed to provide certain tax advantages. In a typical personal injury settlement, a plaintiff who receives a lump-sum payment may exclude this payment from taxable income under I.R.C. § 104(a)(2) (providing that the amount of any damages received on account of personal injuries or sickness are excludable from income). However, any return from the plaintiff's investment of the lump-sum payment is taxable investment income. In contrast, in a structured settlement the claimant receives periodic payments rather than a lump sum, and all of these payments are considered damages received on account of personal injuries or sickness and are thus excludable from income. Accordingly, a structured settlement effectively shelters from taxation the returns from the investment of the lump-sum payment. See Rev. Rul. 79-220, 1979-2 C.B. 74. See also Sen. Rep. No. 97-646, 97th Cong., 2d Sess. reprinted in 1979 U.S.C.C.A.N. 4580, 4583

16

(explaining that Pub. L. No. 97-473, 96 Stat. 2605, codified Rev. Rul. 79-220 at 26 U.S.C. § 104(a)(2)).

A key characteristic of a structured settlement is that the beneficiary of the settlement must not have actual or constructive receipt of the economic benefit of the payments. Rev. Rul. 79-220. In a structured settlement, the settling defendant's "purchase of a[n] . . . annuity contract from the other insurance company [is] merely an investment by [the settling defendant] to provide a source of funds for [him] to satisfy [his] obligation to [the plaintiff]." Id. The arrangement is "merely a matter of convenience to the [defendant] and d[oes] not give the recipient any right in the annuity itself." Id. (emphasis added). Because the recipient never had actual or constructive receipt of the lump-sum amount, the recipient need not include the investment yield on that amount as taxable income. Id. Thus, the exclusion applies to the full amount of the annuity payments because the full amount is received as damages on account of personal injuries. Id.

Before 1983, the utility of structured settlements was diminished by the credit risk that the recipient would have to assume. William Winslow, Tax Reform Preserves Structured Settlements, 65 Taxes 22, 24 (1987). Because the annuity was merely a matter of convenience and did not give the recipient any right in the annuity, in the case of the settling defendant's default the plaintiff could not seek redress from the annuity issuer. Id. This presented a problem if the settling defendant's general credit risk was high.

17

Congress addressed this problem by enacting I.R.C. §130. See Sen. Rep. No. 97-646, 97th Cong., 2d Sess. reprinted in 1979 U.S.C.C.A.N. 4580, 4583. As we detail in subsection C of this opinion, section 130 allows a tax-neutral transaction in which the settling defendant assigns and a third party assumes the obligation to make periodic payments under most section 104(a)(2) structured settlements. When the third party assignee, such as Reliance, has a credit rating superior to that of the settling defendant, such an assignment and assumption agreement benefits a plaintiff, such as Ms. Hayden, by allowing her to rely on the assignee's superior credit. Winslow, supra.

In the instant case, it is apparent that Ms. Hayden, the medical defendants and Reliance structured the settlement to conform with the requirements of sections 104 and 130. Indeed, the parties to the present case agree that the assignment and assumption agreement was designed to "follow[] the road map laid out in I.R.C. § 130 . . ." and that the annuity was purchased as part of a structured settlement agreement. See Hayden's Br. at 19, 28; Western's Br. at 4. The language of the assignment and assumption agreement confirms this.[0] The agreement expressly

[0] Although Ms. Hayden was not a signatory to this the assignment and assumption agreement, this agreement provides evidence of her intent in executing the settlement agreement. When construing an ambiguous contract which by necessary implication refers to another document, the court may look to such document as additional evidence in order to ascertain the intention of the parties. International Organization Master, Mates and Pilots, 439 A.2d at 625. Moreover, as we explain below, under Pennsylvania law when two or more writings are executed as part of one transaction they should be construed together. Finally, we also observe that in the assignment and assumption agreement, the medical defendants "warrant[ed] that [Ms. Hayden . . .

18

stated that it was intended to create an assignment pursuant to the conditions of section 130.  Moreover, the assignment and assumption agreement complied with the requirements of a section 104(a)(2) structured settlement.  The agreement stated that

> Reliance <u>may</u> fund the periodic payments . . .
> by purchasing a[n] . . . annuity contract
> from United . . . .  All rights of ownership
> and control of such annuity shall be vested
> in [Reliance].  However, for [Reliance's]
> convenience, [Reliance] directs United to
> make the payments to . . . [Ms. Hayden]
> . . . .

Western's Br. at Exhibit 2 (emphasis added).  Thus, the agreement explicitly complied with the Revenue Ruling by stating that the annuity was merely a convenient method by which Reliance could fund the obligation and that Reliance, and not Ms. Hayden, exercised ownership and control over the annuity.

Our conclusion that the medical defendants, Reliance and Ms. Hayden intended to enter into a structured settlement clarifies the scope of Ms. Hayden's rights under the structured settlement.  As previously explained, under a structured settlement the obligor has a continuing obligation to pay the periodic payments to the recipient.  The annuity is merely a convenient funding mechanism and does not alter this obligation.  Thus, we believe it is clear as a matter of law that under the settlement agreement the medical defendants had a continuing obligation to pay Ms. Hayden the monthly payments.

---

consented to the assumption of [the] obligation as direct obligation of Reliance . . . and in substitution of the Assignor."  Western's Br. at Exhibit 2.  The Haydens do not argue that Ms. Hayden did not consent to the agreement as warranted.

19

The Haydens' arguments to the contrary are contradictory. While conceding that the parties followed the "roadmap laid out in I.R.C. § 130" and that the annuity "was purchased as the most significant part of a very specific structured settlement agreement," the Haydens argue that the annuity contract was not merely an accommodation to Reliance and that Reliance has no obligation to make periodic payments independent of the annuity. Hayden's Br. at 19, 28. The Haydens argument reveals a misunderstanding of structured settlements. If the parties intended to structure the transaction pursuant to I.R.C. §§ 104 and 130, then they must have intended that the annuity be merely an accommodation and that Reliance have a general obligation to make the periodic payments. Furthermore, the Haydens' interpretation would render the assignment and assumption agreement meaningless. If the sole obligation under the settlement agreement was to purchase the annuity, there would be no point to inserting Reliance into the transaction; the medical defendants could have purchased the annuity themselves and thereby fulfilled all their obligations. It is thus apparent that the defendants executed the assignment because under the settlement agreement they had a continuing obligation that they wished to assign, namely, the obligation to make periodic payments. We conclude, therefore, that the settlement agreement gave Ms. Hayden a legal right to receive monthly payments of $2159.37. We next consider whether this right was assignable.

20

C.

A contractual right to receive a future stream of payments is typically assignable. E. Allan Farnsworth, Farnsworth on Contracts §11.2 (1990). The Haydens argue, however, that even if the settlement agreement vested Ms. Hayden with a legal right to receive the monthly payments, this right was not assignable. The Haydens support this assertion with two arguments.

First, the Haydens argue that the parties to the structured settlement must have intended impliedly to restrict the assignment of Ms. Hayden's right to receive the monthly payments. They premise this argument on their belief that an assignment by Ms. Hayden would cause negative tax consequences for Reliance and that to avoid such a result the parties must have intended to restrict the assignment of the payments. According to the Haydens, in order for Reliance to exclude from income the amount it received for agreeing to the assignment, the periodic payments it agreed to make must be excludable from the payee's gross income under section 104(a)(2). See I.R.C. § 130(a),(c)(2)(E). Thus, they conclude that the agreement must impliedly restrict assignments because the payments are excludable only if Ms. Hayden is the payee.

We consider the operation of section 130 for the limited purpose of assessing whether the parties intended impliedly to restrict assignments. The Internal Revenue Code defines gross income broadly to include "all income from whatever source derived . . . ." I.R.C. § 61. Under section 130(a),

21

however, an assignee may exclude from gross income "[a]ny amount received for agreeing to a qualified assignment . . . to the extent that such amount does not exceed the aggregate cost of a qualified funding asset."  A qualified assignment is one that satisfies certain criteria, one of which requires that the periodic payments assigned must be excludable from the recipient's gross income under I.R.C. § 104(a)(2).  See I.R.C. §130(c)(2)(E).  Furthermore, a qualified funding asset is an annuity contract meeting certain requirements and purchased by the assignee within 60 days of the assignment.  See I.R.C. §130(d).

When an assignee receives an amount for agreeing to a qualified assignment, the assignee may use that amount to purchase an annuity that satisfies the criteria of a qualified funding asset.  I.R.C. § 130(a).  If the assignee does so, the assignee can exclude the amount used to purchase the annuity from income.  Because this amount was excluded, the basis of the annuity is then reduced by that amount.  I.R.C. § 130(b).  In the future, the income from the annuity is offset, presumably by a business expense deduction, when these payments are distributed to the payee.  See C.C.H. Standard Federal Tax Reports ¶ 7383 (1994).  See generally I.R.C. §§ 61, 162.[0]

---

[0]An example may be helpful.  Assume a settling defendant pays a third party $100,000 for its agreement to assume an obligation to make periodic payments under a structured settlement.  Assume further that the assignment is a qualified assignment under I.R.C. § 130(c).  If the third party purchases an $95,000 qualified funding asset then it has $5000 of income.  The basis of the annuity is reduced to $0.  All future income from the annuity is taxable income, which presumably is offset by a

22

In the present case, Reliance presumably exercised its section 130 exclusion when it assumed the medical defendants' obligation. The Haydens would have us conclude that Reliance would retroactively lose this exclusion if Ms. Hayden assigned her right to receive the periodic payments under the settlement agreement. Thus, they would have us infer that, upon Ms. Hayden's assignment of the payments, the original cost of the annuity less the annuity payments already received as income by Reliance becomes income to Reliance and the basis of the annuity is increased accordingly. The Haydens, however, do not cite, and our research has failed to reveal, any support for this novel proposition. We are therefore unpersuaded by the Haydens theory, and we decline to infer that the settlement agreement was intended to limit assignment of Ms. Hayden's right to receive the periodic payments.

The Haydens present a second reason why they believe that even if Ms. Hayden had a legal right to receive the monthly payments, this right was not assignable. They contend that the settlement agreement must be read together with the annuity contract and that a provision of the annuity contract prevents the assignment of Ms. Haydens' rights under both that contract and the settlement agreement.

> Under Pennsylvania law, when two or more writings are executed at the same time and involve the same transaction, they should be construed as a whole. If the writings pertain to the same transaction, it

business expense. See generally C.C.H. Standard Federal Tax Reports ¶ 7383.03 (1994).

23

does not matter that the parties to each writing are not the same.

Black v. T.M. Landis, Inc., 421 A.2d 1105, 1107 (Pa. Super. 1980)(citations omitted). This general rule also applies where several agreements are made as part of one transaction even though they are executed at different times. Neville v. Scott, 127 A.2d 755, 757 (Pa. Super. 1956).

In the present case, the Haydens maintain that Pennsylvania law requires the settlement agreement and the annuity contract to be read together. Both documents were executed as part of the structured settlement. The settlement agreement specifically referred to the purchase of an annuity from United. Although Ms. Hayden was not a party to the annuity contract, she was the annuitant and the payee of the contract. Furthermore, the settlement agreement and the annuity contract were executed within two weeks of each other. Because Western agrees with this argument, we will assume that the two documents should be read together. See Western's Reply Br. at 4. Thus, we turn to consider whether the annuity contract contained a clause proscribing assignments by Ms. Hayden.

The Haydens contend that the following clause in the annuity contract proscribed assignments by Ms. Hayden:

> Protection from Creditors -- The Annuity payments will not be subject to the debts, contracts or engagements of any person entitled to such payments by the terms of the Contract. Nor will any such payments be subject to any judicial process to levy or attach them. This protection is given to the extent allowed by law.

Id.

24

For at least three reasons, we reject the Haydens' argument.  First, the plain language of the clause refers only to involuntary attachments.  As the title of the clause implies, the clause acts to protect the payee from creditors by preventing them from attaching the annuity payments.  The clause, however, does not expressly bar a voluntary assignment.  If the parties to the annuity contract intended to proscribe voluntary assignments, it would have been simple to add a clause to accomplish that purpose.  See Bank of New England v. Standlund, 529 N.E. 394, 395 (Ma. 1988)(interpreting clause, which stated: "no income or principal . . . payable to any beneficiary . . . shall be attachable, trusteeable or in any manner liable for or to be taken for any debts, contracts or obligations of . . . beneficiary," to restrict only involuntary alienation because there were no "words that indicate[d] . . . [an] inten[t] to prohibit . . . beneficiaries from voluntarily assigning their interests in the [trust].")

Second, other provisions of the contract imply that this clause does not prevent voluntary assignments.  The annuity contract explicitly states that "the owner may assign an interest in th[e annuity] contract."  Western's Br. at Exhibit 3.  The owner can also be the payee.  If the protection-from-creditors clause prevents an assignment by "any person entitled to such payments by the terms of the [c]ontract," then it would prevent assignments by the owner when the owner was also the person entitled to such payments.  Thus, reading the protection-from-creditors clause to bar voluntary assignments would contradict

25

the owner's right to assign an interest in the annuity when the owner was also a payee.

Third, even if the annuity contract's protection-from-creditors clause proscribed the payee from voluntarily assigning her rights to receive payments under the annuity, this would not imply that in the instant case it prevents Ms. Hayden from assigning her rights to receive periodic payments under the settlement agreement. Reading the annuity contract and the settlement agreement as a whole, it is clear that the protection-from-creditors clause of the annuity applies only to the annuity payments. The clause plainly states that it applies to "[t]he [a]nnuity payments." We find no evidence to support the proposition that this clause was intended also to apply to payments made under the settlement agreement. Consequently, we reject the Haydens' argument that Ms. Hayden's right to receive periodic payments under the settlement agreement was not assignable.

III.

For the reasons stated we hold that, as a matter of law, the documents executed by Ms. Hayden in September 1990 constituted an effective legal assignment to Western of her right to receive the periodic payments provided for in the settlement agreement. Thus, unlike the concurrence, we hold that Western now has a right to receive the periodic payments from Reliance and that Ms. Hayden no longer has a right to receive these payments. In light of this holding we must reverse the order of

26

the district court in the adversary proceeding.  We need not and do not consider the additional arguments raised by the parties. Rather, we remand this case for further proceedings consistent with this opinion.