**In re Derek J. BROOKS, and Sheria Mae Brooks, Debtors.**

**No. GG 99–07513.**

United States Bankruptcy Court,
W.D. Michigan.

March 8, 2000.

David C. Andersen, Grand Rapids, Michigan, for debtors.

Michael M. Malinowski, Wyoming, Michigan, for Settlement Funding LLC.

## OPINION REGARDING VALIDITY OF PREPETITION ASSIGNMENT OF STRUCTURED SETTLEMENT RIGHTS

JAMES D. GREGG, Chief Judge.

### I. INTRODUCTION

Creditor Settlement Funding LLC, d/b/a Peachtree Settlement Funding ("Settlement Funding"), objects to confirmation of the chapter 13 plan of debtors Derek and Sheria Brooks (collectively "debtors") on three grounds. The objections all stem from Mr. Brooks's attempted unilateral nullification of a prepetition assignment of his right to receive periodic payments under a structured settlement agreement. The debtors contend that the assignment is invalid and unenforceable under Michigan law. In this opinion, the court will address only the narrow legal question concerning the validity of the assignment; the resolution of other issues must await the development of a fuller record.[1]

---

1. With respect to confirmation, Settlement Funding contends that the plan was filed in bad faith, that it fails to meet the "liquidation test," and that it does not provide for the retention of Settlement Funding's lien. *See* 11 U.S.C. § 1325(a)(3), (a)(4), & (a)(5). On

## II. JURISDICTION

The court has jurisdiction over this contested matter under 28 U.S.C. § 1334. The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L) because it involves an objection to the confirmation of the debtors' chapter 13 plan.

## III. PROCEDURAL HISTORY

The debtors filed their joint chapter 13 petition and plan with this court on September 20, 1999. On December 9, 1999, Settlement Funding filed its objection to confirmation. The debtors filed their response to the objection on January 25, 2000, together with an objection to Settlement Funding's claim and a motion for turnover.[2] Settlement Funding filed a reply brief on February 7, 2000 in further support of its objection. The court held a hearing on February 8, 2000 to consider the objection, and took the matter under advisement to issue this written opinion.

## IV. DISCUSSION

### A. *Issue*

At issue in this opinion is whether Derek Brooks, prior to filing his bankruptcy petition, validly assigned to Settlement Funding his right to receive certain payments under a structured settlement agreement.

### B. *Facts*

Debtor Derek Brooks was involved in an accident on August 5, 1993, and as a result he asserted a cause of action against the alleged tortfeasors. In February, 1995, the parties to the accident and their insurer settled Mr. Brooks's claim by entering into a structured settlement. The documents comprising this structured settlement include (1) a Release dated February 25, 1995, (2) a Uniform Qualified Assignment and Release, and (3) a Single Premium Annuity Certain issued by First Colony Life Insurance Company.

Under the Release, Mr. Brooks agreed to accept $25,000 in settlement of his claims against the alleged tortfeasors and their insurance company. The parties to the Release apparently intended that Mr. Brooks would receive periodic payments of $635 per month beginning on May 1, 1995 and ending on April 1, 2005, under a structured settlement.[3] Pursuant to the structured settlement, the tortfeasors' insurance company assigned to Jamestown Life Insurance Company ("Jamestown") the obligation to make periodic payments to Mr. Brooks. In addition, Jamestown agreed to

---

the present record, the court will not decide these issues, some of which require testimony and other evidence. For example, even if the court decides that the assignment is valid, the court cannot resolve the issue of the debtors' good faith without considering a variety of other factors. Moreover, because the debtor has objected to Settlement Funding's claim, it is conceivable that Settlement Funding may not have an "allowed secured claim" within the meaning of § 1325(a)(5). In short, today the court decides only the validity of the prepetition assignment under Michigan law. The court does not address other matters related to the transaction at issue in this opinion, such as claims allowance, plan confirmation (feasibility, good faith, best interest of creditors etc.), avoidance, non-dischargeability, exempt property, or others.

2. The court scheduled a hearing on the claim objection and the motion for turnover for March 14, 2000.

3. Although the document entitled "Release" does not refer to any structured settlement (instead, the Release says that Mr. Brooks is to receive $25,000), the court infers that the parties, through several related agreements and intermediaries, used the $25,000 to purchase an annuity generating monthly payments of $635 for ten years beginning on May 1, 1995. The parties apparently entered into a structured settlement for tax reasons. *See* Uniform Qualified Assignment and Release at ¶ B (declaring that the parties intend to enter into a " 'qualified assignment' in accordance with section 130(c) of the Internal Revenue Code of 1986 ...."); *see also* Purchase Agreement dated January 8, 1999 at § 4(n) (Mr. Brooks represents that any restrictions on assignability contained in the structured settlement documents were inserted to assure favorable tax treatment under 26 U.S.C. § 104(a)(2)).

purchase an annuity to fund *Jamestown's* newly-assumed obligation to make the periodic payments. The parties to this transaction intended to effect a "qualified assignment" within the meaning of 26 U.S.C. § 130(c). Jamestown in fact purchased an annuity from First Colony Life Insurance Company for the purpose of funding its obligation to Mr. Brooks. Presumably, Mr. Brooks received the monthly payments from 1995 until early 1999.

In January, 1999, in need of funds, Mr. Brooks entered into two transactions with Settlement Funding (denominated in the documents as "Purchase Agreement" dated January 8, 1999 and "Purchase Agreement" dated February 23, 1999) whereby he purported to assign his right to receive 66 structured settlement payments of $635 per month from February 1, 1999 to July 1, 2004. In exchange, Mr. Brooks received $23,457 from Settlement Funding. According to Settlement Funding, shortly after receiving the $23,457, Mr. Brooks received—but did not forward to Settlement Funding—annuity payments for March, July, August, and September, 1999, totaling $2,040.[4] After Settlement Funding sued Mr. Brooks for the breach of the Purchase Agreement, he and his wife filed their voluntary petition on September 20, 1999. Settlement Funding also states that it has not received any postpetition payments on account of the assignment.

## C. *Analysis*

■ Although Settlement Funding couches its objection in the language of section 1325 of the Bankruptcy Code pertaining to the confirmation of a chapter 13 plan, the relevant legal question is whether the prepetition assignment of Mr. Brooks's right to receive periodic payments for the period from February 1, 1999 to July 1, 2004 (under the two purchase agreements)

is valid. If the assignment is valid, the right to receive the payments did not become property of the bankruptcy estate upon the filing of the petition. If the assignment is invalid, the right to receive the payments is part of the estate.

1. *The Rights That Mr. Brooks Had Under the Structured Settlement Agreement, and That He Purported to Assign Under the Purchase Agreements.*

What were Mr. Brooks's prepetition rights under the structured settlement agreement? What rights did he validly assign, if any, to Settlement Funding under the Purchase Agreements?

When Mr. Brooks settled his personal injury claim arising out of the 1993 accident, he agreed that he would receive his payments over time under an arrangement commonly referred to as a "structured settlement." By agreeing to receive the payments over time, Mr. Brooks was permitted to exclude from his gross income for federal tax purposes not just the money he received as personal injury damages ($25,-000),[5] but also the investment income he would have received had he invested that lump sum himself. That the structured settlement was motivated by tax considerations is evident from the Uniform Qualified Assignment and Release that Mr. Brooks signed, as well as the two Purchase Agreements he signed. Because the court has determined that Mr. Brooks intended to enter into a structured settlement, this fact "clarifies the scope of [his] rights" under that agreement. *Western United Life Assurance Co. v. Hayden*, 64 F.3d 833, 840–41 (3d Cir.1995).

As the Third Circuit explained, a "key characteristic of a structured settlement agreement is that the beneficiary of the settlement," such as Mr. Brooks, "must

---

**4.** Settlement Funding alleges that Mr. Brooks failed to forward the full $635 for each of the months of March, August, and September, 1999, and failed to forward $ 135 of the $635 payment in July, 1999, for a total of $2,040.

In addition, Settlement Funding alleges that Mr. Brooks has failed to forward all of the postpetition annuity payments.

**5.** *See* 26 U.S.C. § 104(a)(2).

not have actual or constructive receipt of the economic benefits of the payments." *Id.,* 64 F.3d at 839–40; *see also* Rev. Rul. 79–220, 1979–2 C.B. 74 (explaining that the exclusion from income for damages received on account of personal injury applies to each monthly payment received under a structured settlement, provided that the taxpayer does not have "actual or constructive receipt or the economic benefit of the lump-sum amount that was invested to yield that monthly payment"); *see also* 26 U.S.C. §§ 104(a)(2) & 130(c).

■ In conformity with these income tax principles, Mr. Brooks agreed that he would have no ownership interest in the Single Premium Annuity Certain issued by First Colony,[6] and that Jamestown would purchase the annuity from First Colony in order to fund Jamestown's obligation to make payments to Mr. Brooks. *See* Uniform Qualified Assignment and Release at ¶ 2 (Brooks may not "accelerate, defer, increase, or decrease any payment" provided in section 13 of the Uniform Qualified Assignment and Release) & ¶ 4 (Brooks expressly agrees that he will have "no right or interest in the annuity," other than a security interest to secure Jamestown's payment obligation); *see also* Single Premium Annuity Certain at 1 (noting that Brooks is not the owner of the annuity, and specifying that Jamestown—the owner—may change the payee). As explained in *Western United,* the purchase of the annuity is "merely a matter of convenience to [Jamestown] and d[oes] not give [Mr. Brooks] any right in the annuity itself." *Western United Life Assurance Co.,* 64 F.3d at 840 (quoting Rev. Rul. 79–220, 1979–2 C.B. 74). Although Mr. Brooks does not have a right *under the annuity contract* to assign the annuity payments, he may have the right to assign Jamestown's obligation to make periodic payments under the *settlement agreement.*

*Id.,* 64 F.3d at 838, 841, 843. This distinction is crucial.

■ The Purchase Agreements included in Settlement Funding's Exhibit Booklet establish that Mr. Brooks agreed to "sell[ ], transfer[ ], assign[ ], set[ ] over and convey[ ]" to Settlement Funding the "Assigned Assets," a term defined in the agreements as the right to receive specified periodic payments under "the Release, the Annuity (or any funding asset substituted for the Annuity), the Qualified Assignment and any other documents executed in connection therewith or otherwise relating to the foregoing ...." *See* Purchase Agreement dated Jan. 8, 1999 at § 1(a) and Terms Rider; Purchase Agreement dated Feb. 23, 1999 at § 1(a) and Amended Terms Rider. Although the court does not believe that Mr. Brooks had any interest in the annuity (other than perhaps a security interest to secure Jamestown's obligation to make periodic payments), the court nevertheless concludes that Mr. Brooks assigned his right to receive from Jamestown the periodic payments under the Release and the Uniform Qualified Assignment and Release. *See Western United Life Assurance Co.,* 64 F.3d at 838, 841, 843; *Settlement Funding, LLC v. Jamestown Life Ins. Co.,* 78 F.Supp.2d 1349 (N.D.Ga.1999) ("What the [beneficiaries of the settlement agreement] have assigned, as clearly set forth in the various Purchase Agreements, are their rights to receive the Periodic Payments under the Settlement Agreement from an annuity or otherwise.").

2. *The Validity of the Assignment.*

■ The debtors do not challenge the fact that Mr. Brooks entered into the Purchase Agreements, nor do they contest the authenticity of the related documents. Rather, they contend that the assignment

---

**6.** The only interest that Mr. Brooks arguably had in the annuity under the Uniform Qualified Assignment and Release was a security interest to secure Jamestown's continuing obligation to make periodic payments to him under the settlement agreement and related agreements. There is nothing in the record to indicate that Mr. Brooks ever enforced (or needed to enforce) that security interest.

is unenforceable because of an anti-assignment clause contained in the "Spendthrift Trust" provisions of the Single Premium Annuity Certain,[7] and a Michigan insurance statute which allegedly fortifies the spendthrift trust.[8] Settlement Funding, in contrast, relies principally upon *Wonsey v. Life Insurance Co. of North America,* 32 F.Supp.2d 939 (E.D.Mich.1998), which upheld the validity of a similar assignment of rights under a structured settlement in the face of an anti-alienation clause similar to the clause at issue in this contested matter.

The debtors attempt to avoid the effect of the *Wonsey* decision by pointing out that that court did not have the benefit of reviewing Mich. Comp. Laws Ann. § § 500.4054 which, they contend, invalidates the assignment. Although the argument has a superficial appeal, it ultimately misses the point.

Both the spendthrift clause and the statute are irrelevant because, given the nature of a structured settlement agreement and qualified assignment, Mr. Brooks had no ownership interest in the annuity. *See supra* at 103. As explained above, Jamestown owned the annuity, having acquired it as a convenient means of meeting its obligation to make periodic payments to Mr. Brooks under the Uniform Qualified Assignment and Release. Mr. Brooks had no enforceable right to remain as "payee" because Jamestown had the right at any time to change the designation. Mr. Brooks could not assign the rights under the annuity because he had none, not because the

spendthrift trust or the insurance statute prohibited him from doing so.

Even if the court assumes that the restriction on alienation contained in the Single Premium Annuity Certain is enforceable and applies to Mr. Brooks, the restriction must be read as prohibiting the assignment of the payments *under the annuity,* but not the assignment of the right to enforce Jamestown's continuing obligation to make payments to the debtor under the Qualified Assignment and Release. *See Western United Life Assurance Co.,* 64 F.3d at 843 ("even if the annuity contract's protection-from-creditors clause proscribed the payee from voluntarily assigning her rights to receive payments under the annuity, this would not imply that in the instant case it prevents [the payee] from assigning her rights to receive periodic payments under the settlement agreement").

Moreover, assuming, *arguendo,* that Mr. Brooks had an assignable interest in the Single Premium Annuity Certain, and that the anti-alienation clause therefore had some purpose with respect to Mr. Brooks, the court is not persuaded that it would be enforceable under Michigan law. Because Mr. Brooks was involved in structuring the settlement, and because the annuity was effectively funded with the proceeds of his cause of action, he could easily be regarded as the settlor *and* the beneficiary of the spendthrift trust. *See, e.g., In re Walters,* 172 B.R. 283, 287 (Bankr. W.D.Mo.1994). A self-settled spendthrift trust is not enforceable under Michigan law against the settlor's creditors. *See In*

7. The spendthrift clause provides that "[p]ayments to be made under this [Annuity] Contract are held in trust for the payee and are not subject to the claims of creditors of any payee or to any legal process against any payee," and that "[a]ny payment to be made to a payee may not be transferred, commuted, or encumbered by such payee." *See* Single Premium Annuity Certain at 6.

8. The insurance statute provides, in relevant part, as follows:

Any life or endowment insurance or annuity contract issued by a domestic, foreign or alien insurer may provide that the proceeds thereof or payments thereunder shall not be subject to the claims of creditors of any beneficiary other than the insured or any legal process against any beneficiary other than the insured; and if the said contract so provides, the benefits accruing thereunder to such beneficiary other than the insured shall not be transferable nor subject to commutation or encumbrance, or to process. Mich. Comp. Laws Ann. § 500.4054(3).

*re Wilcox,* 225 B.R. 151, 158 (Bankr. E.D.Mich.1998) (quoting *Fornell v. Fornell Equip., Inc.,* 390 Mich. 540, 213 N.W.2d 172 (1973)).

For similar reasons, Mr. Brooks very probably cannot claim the protection of Mich. Comp. Laws Ann. § 500.4054, because he might be regarded as the "beneficiary" and the "insured," and the statute only protects a "beneficiary other than the insured." *Cf. In re Parsons,* 161 B.R. 194, 196–97 (Bankr.W.D.Mich.1993) (annuitant's conservator, who was named as "payee" under annuity, was considered to be "insured" and "beneficiary" within the meaning of Mich. Comp. Laws Ann. § 500.4054, and therefore not within the protection of the statute); Mich. Comp. Laws Ann. § 500.4054(3). This construction of the statute is supported by the same public policy that makes self-settled trusts unenforceable against the settlor-beneficiary's creditors. Moreover, it is possible to read the statute as prohibiting only the involuntary transfer of payments under the annuity.[9] Because the spendthrift clause and the statute are irrelevant, the court need not resolve these difficult issues of state law.

Finally, the court notes that other bankruptcy courts have, as a matter of applicable law, similarly upheld the assignment of rights by the beneficiary of a structured settlement. *See Jones v. J.G. Wentworth S.S.C. Limited Partnership (In re Berghman),* 235 B.R. 683 (Bankr.M.D.Fla.1999) (debtor's prepetition assignment of right to payments under structured settlement is valid); *In re Freeman,* 235 B.R. 121 (Bankr.M.D.Fla.1999) (same) (*citing In re Freeman,* 232 B.R. 497 (Bankr.M.D.Fla. 1999)); *cf. Souther v. Safeco Life Ins. Co. (In re Cooper),* 242 B.R. 767 (Bankr. S.D.Ga.1999) (trustee may assign debtor's rights to receive periodic payments under structured settlement, notwithstanding anti-assignment clause contained in the agreement).

Summarizing, contract rights, such as Mr. Brooks's rights under the structured settlement, are generally assignable,[10] and the court is not persuaded that applicable law provides any restriction. Therefore, the court is constrained to uphold the assignment of rights under the Purchase Agreements.

## V. CONCLUSION

For the foregoing reasons, the court finds that, as between Settlement Funding and the debtors, Mr. Brooks's prepetition assignment of rights is valid. Therefore, the payment stream is not property of the estate, and the debtors may not use it to

9. Because contract rights are generally assignable under the common law of Michigan, this construction would be preferable. *Board of Trustees of Michigan State Univ. v. Research Corp.,* 898 F.Supp. 519 (W.D.Mich.1995) (contract rights are generally assignable); *Selby v. Ford Motor Co.,* 405 F.Supp. 164 (E.D.Mich.1975) (same), aff'd, 590 F.2d 642 (6th Cir.1979); *Rodgers v. Torrent,* 111 Mich. 680, 70 N.W. 335 (1897) (the right to recover money due under a contract partially performed is assignable); *Grand Traverse Convention and Visitor's Bureau v. Park Place Motor Inn, Inc.,* 176 Mich.App. 445, 440 N.W.2d 28 (Ct.App.1989) ("Generally, all legitimate causes of action are assignable."); *cf. Wonsey,* 32 F.Supp.2d at 943 (*citing* Restatement (Second) of Contracts § 322). Although the debtors stress the language in Mich. Comp. Laws Ann. § 500.4054(3) providing that benefits "shall not be transferable nor subject to commutation or encumbrance"

(language arguably suggesting that the statute prohibits voluntary transfers), this limitation only applies if the insurance or annuity contract provides that the benefits "shall not be subject to claims of creditors ... or any legal process." This latter language seems to refer solely to involuntary transfers. In other words, to paraphrase the debtors' reading of the statute, if the annuity contract provides restrictions on involuntary transfers of benefits, the beneficiary cannot voluntarily transfer the benefits either. Such a construction of the statute is not persuasive, and it does violence to the rule of construction that statutes in derogation of the common law are strictly construed. *See Marquis v. Hartford Accident & Indemnity,* 444 Mich. 638, 653, 513 N.W.2d 799, 806 (1994); *In re Lott,* 196 B.R. 768, 775 (Bankr.W.D.Mich.1996).

10. *See* cases cited *supra* at n. 9.

fund their chapter 13 plan. This ruling, however, is without prejudice to the rights of any third parties, such as Jamestown, the chapter 13 trustee, or any subsequently appointed trustee. Having determined only the legal question of the validity and enforceability of the assignment, the court will consider the remaining confirmation issues at the hearing presently scheduled for April 5, 2000, at 10:00 a.m. Following that hearing, the court will enter an appropriate order.