882 F.2d 856
 ALLSTATE INSURANCE COMPANY; Allstate Life Insurance
Company, Plaintiffs-Appellees,
v.
AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA; Roger D.
Roberts, a/k/a Roger Dwain Roberts, Defendants-Appellants,
Marion Deisher, Defendant-Appellee.
 No. 88-1108.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1989.
Decided Aug. 10, 1989.
 
 1
 Daniel Leone Crandall, Roanoke, Va., for defendants-appellants.
 
 
 2
 Raymond R. Robrecht, Salem, Va., James Wilson Jennings, Jr. (Frank K. Friedman, Woods, Rogers & Hazlegrove, Roanoke, Va., on brief), for plaintiffs-appellees.
 
 
 3
 Before MURNAGHAN, Circuit Judge, STAKER, United States District Judge for the Southern District of West Virginia, and HOWARD, United States District Judge for the District of Maryland, both sitting by designation.
 
 
 4
 STAKER, District Judge.
 
 
 5
 Appellants, American Bankers Insurance Company of Florida and Roger D. Roberts, trading as Allstate Bonding Company, assert that in a non-jury trial, the district court erred by finding and adjudging (1) that an agreement (hereinafter, the "assignment") entered into between appellee, Marion Deisher, and appellants, which purported to assign from Deisher to appellants some of the monthly annuity payments thereafter to become payable to Deisher under an annuity policy issued by appellee, Allstate Life Insurance Company (Allstate Life), did not constitute an enforceable assignment of those annuity payments from Deisher to appellants, and (2) that Deisher was not obligated under the assignment to pay to appellants the annuity payments therefrom as they thereafter became due. Finding no merit to appellants' claims of error, we affirm.
 
 I.
 
 6
 Except for those noted to have been found by the court, the following facts were undisputed:As a part of a structured settlement of a personal injury claim asserted by Deisher against one of its insureds, appellee Allstate Insurance Company (Allstate Insurance) caused Allstate Life to issue to Allstate Insurance an annuity policy in which Allstate Insurance was named as the "owner" of the annuity and Deisher was named the annuitant thereof.
 
 
 7
 Designed as it was, pursuant to the Internal Revenue Code and related statutes, to provide Deisher with taxfree, monthly payments, that annuity policy provided for the payment from Allstate Life to Deisher of $465 per month, beginning on December 21, 1984, for 300 months, or for the remainder of his lifetime, whichever was longer, expressly provided that Allstate Insurance was the owner of the annuity, and further provided that if Deisher died before all of the 300 annuity payments were made, then such of them as remained unpaid at his death would be paid to his estate as beneficiary unless during his lifetime he designated a beneficiary thereof in lieu of his estate and so notified Allstate Life.
 
 
 8
 On April 17, 1987, Deisher's friend, one Kosko, was arrested and charged in a criminal complaint with a single violation of Title 21 U.S.C. Sec. 841(a)(1), possession with intent to distribute cocaine. Kosko was unable to post a $75,000 bond, and on April 23, 1987, continued to remain in custody awaiting indictment and trial on that single charge.
 
 
 9
 After Kosko's arrest, Dillon, a mutual friend of Deisher and Kosko, requested Deisher to aid Kosko to post that bond, and Deisher agreed to do so. To that end, Dillon brought Deisher and Roberts together. Deisher indicated to Roberts his willingness to assign to appellants the annuity payments thereafter to become payable to him under the annuity policy as security to appellants if appellants would execute Kosko's bond as his sureties.
 
 
 10
 In an attempt to ascertain whether Deisher's rights under the annuity policy were assignable, Roberts and Deisher consulted with an agent of Allstate Insurance, who informed them that it was the position of Allstate Insurance that Deisher's rights thereunder were not assignable by him. The court found, as fact, that that agent so informed them as he testified.[1] Deisher and Roberts then went to the office of Roberts' attorney, who likewise informed them that he questioned Deisher's right to assign his rights thereunder. Nevertheless, because he noted that the annuity policy contained no language either prohibiting or permitting Deisher's assigning his rights thereunder, that attorney drafted the assignment agreement for execution by Deisher and appellants.
 
 
 11
 On April 23, 1987, Deisher and appellants executed the assignment wherein appellants agreed to execute, as sureties, Kosko's bail bond, conditioned for his appearance for trial on the above single charge, which was specifically mentioned in the assignment, in consideration of Deisher's agreeing therein to "irrevocably assign [to appellants] all of his right, title and interest to and in the ... annuity contract and proceeds due thereunder from Allstate Insurance Company up to and including the sum of $75,000, together with" interest and costs, expenses, and attorney fees incurred by appellants should forfeiture of that bond occur.[2]
 
 
 12
 Compliant with the assignment, Roberts executed Kosko's bond as agent of appellants, as sureties, and Kosko was released from custody thereon. Deisher did not sign the bond as surety or otherwise.
 
 
 13
 Thereafter an indictment was returned charging Kosko with the single violation of 21 U.S.C. Sec. 841(a)(1). That was the only charge that had been lodged against Kosko at the time the assignment was executed and the bond posted and until the indictment was returned. And in addition, that indictment charged Kosko with a "continuing criminal enterprise" in violation of 21 U.S.C. Sec. 848, which carried a minimum mandatory prison sentence of ten years.
 
 
 14
 Roberts was, but Deisher was not, present in court on June 11, 1987, when Kosko appeared for his arraignment upon the charges in the indictment. The court then, without objection by Roberts, permitted Kosko to remain free on that same bond.[3]
 
 
 15
 The district court found, as fact, that Roberts knew of the additional charge upon which Kosko was indicted and failed to notify Deisher thereof and of the change it would effect in Deisher's obligation under the assignment, and that it was not until after Kosko had failed to appear that Deisher gained that knowledge from another source.[4]
 
 
 16
 On or about July 2, 1987, Kosko violated the conditions of his bond by failing to appear, and remained a fugitive. On July 10, 1987, Kosko's bond was forfeited by the court and judgment was rendered in favor of the United States of America and against Kosko and appellants for $75,000.[5]
 
 
 17
 Appellants then demanded reimbursement from Deisher and Allstate Life pursuant to the assignment. Deisher instituted an action against appellants in which he sought rescission of the assignment upon the ground that it did not constitute a valid assignment. Allstate Life and Allstate Insurance intervened and interpleaded Deisher and appellants, praying among other things that the court determine whether the annuity and the annuity payments were assignable by any person other than Allstate Insurance, the named "owner" thereof in the annuity policy. The court aligned those intervenors as plaintiffs and Deisher and appellants as defendants.
 
 
 18
 Rule 52(a), Federal Rules of Civil Procedure, provides that findings of fact made by a trial judge pursuant thereto "shall not be set aside unless clearly erroneous." See Darter v. Greenville Community Hotel Corporation, 301 F.2d 70 (4th Cir.1962); Anderson v. Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). There was ample and substantial evidence to support the district court's findings of fact above noted, and they clearly were not erroneous ones.
 
 II.
 
 19
 The district court was presented with three separate but related issues: First, did the writing purporting to be an assignment executed by Deisher and appellants constitute a valid legal assignment? Second, if it did not do so, then did it constitute an enforceable equitable assignment? And third, regardless of how either or both of those first and second issues are properly decided, did permitting Kosko's bond to operate as an appearance bond in respect to the additional "continuing criminal enterprise" charge in the indictment, without Deisher's knowledge and consent, constitute a modification of his obligation under the purported assignment that would, as a matter of law, release him therefrom?
 
 
 20
 As to that first issue: It is axiomatic that one may not sell, assign or hypothecate that which he does not own. Deisher had no ownership in the annuity itself. The annuity policy plainly stated, as the district court pointed out, that Allstate Insurance was the owner of the annuity. Thus, Deisher could not lawfully assign that annuity, wherefore the purported assignment did not constitute a valid legal assignment.
 
 
 21
 Moreover, the assignment did not constitute a valid legal assignment, because it did not operate as a transfer of a right of Deisher's existing at the time the assignment was executed, but rather sought to transfer proceeds to which he was to become entitled in the future, and even then the transfer thereof was not to become effective until and unless Kosko's bond was forfeited. In re Musser, 24 B.R. 913, 919 (W.D.Va.1982) (contract to transfer proceeds to be received in the future by the promisor not a legal assignment, because it does not involve a present transfer of a present right); Kelly Health Care v. Prudential Ins. Co., 226 Va. 376, 309 S.E.2d 305, 307 (1983) (for there to be a valid assignment, "the obligee must have intended, at the time of the transfer, to dispossess himself of an identified interest, or some part thereof, and to vest indefeasible title in the transferee."); S.L. Nusbaum & Co. v. Atlantic Virginia Realty Corp., 206 Va. 673, 681, 146 S.E.2d 205, 210 (1966) (to effect an equitable assignment "the intent to transfer a present ownership of the subject matter of the assignment to the assignee must be manifested....").
 
 
 22
 The district court properly held the assignment not to constitute a valid legal assignment.
 
 
 23
 As to the second issue, appellants contended that what Deisher assigned was not the annuity or the policy itself, but rather Deisher's rights to receive from Allstate Life the annuity payments that were to become payable to him in the future thereunder, as contemplated by the terms of the assignment; that those rights constituted an interest of his which was lawfully assignable; and that the assignment operated to transfer those rights to appellants.
 
 
 24
 The court reasoned that what appellants were actually asking the court to do was to specifically enforce Deisher's purported assignment against Allstate Life and Allstate Insurance, citing Restatement (Second) Contracts Sec. 326(1), comment a. (1981) (a partial assignment "may create an equitable interest in the promisee by virtue of a right to specific performance of the promise.").
 
 
 25
 And the district court held that since specific performance was an equitable remedy, application thereof was in the sound discretion of the court, Haythe v. May, 223 Va. 359, 288 S.E.2d 487 (1982), and that equity would not decree specific performance of a contract that is "founded in fraud, imposition, mistake, undue advantage, or gross misrepresentation, or where ... it would be unconscientious to enforce it," Clay v. Landreth, 187 Va. 169, 45 S.E.2d 875, 879 (1948).
 
 
 26
 The district court found and held that it would be inequitable and unjust specifically to enforce the assignment against Allstate Life and Allstate Insurance, because the annuity policy plainly stated that Allstate Insurance was the owner thereof, Roberts had been told by Allstate Insurance's agent that Deisher's interests therein were not assignable, appellants had nevertheless procured Deisher's execution of the assignment purporting to assign that which he did not then own and other circumstances present in the case.
 
 
 27
 The district court did not abuse its discretion by so finding and holding.
 
 
 28
 As to the third issue, the court exercised its pendent jurisdiction to decide appellants' claims against Deisher himself to recover the proceeds of the annuity.
 
 
 29
 Deciding that issue, the court held that, having attempted to assign the proceeds of the annuity as surety on the bond posted by appellants for Kosko, Deisher became a surety on Kosko's bond; that Deisher's obligation thereon was materially modified by the subsequent indictment that included the much more serious "continuing criminal enterprise" charge, which increased the likelihood of Kosko's flight and failure to appear, and thus increased the risk attending Deisher's obligation; that Deisher did not consent to that modification and the increased risk resulting therefrom; and that, as a matter of law, those circumstances released Deisher from any obligation he may have had to appellants under the terms of the purported assignment.
 
 
 30
 The United States of America was the "creditor" in respect to Kosko's bond. As between Kosko, the principal, and appellants, his sureties, on that bond, Kosko was primarily, and appellants secondarily, liable thereon. But as between appellants and Deisher, appellants were primarily, and Deisher secondarily, liable thereon, notwithstanding that Deisher did not himself execute that bond. Forfeiture of the bond triggered the liability, to the creditors, of appellants, as sureties thereon, which in turn triggered the liability to appellants of Deisher, as surety for appellants under the terms of the assignment. Deisher thus bore, as to appellants, a relationship in the nature of a "subsurety."
 
 
 31
 The Restatement of the Law of Security Sec. 145 (1941) reads:
 
 
 32
 Subsuretyship is the relation between two or more sureties who are bound to answer for the same duty of the principal where one, the principal surety, in respect of the other, the subsurety, has the whole duty of performance.
 
 Comment a. thereof in part explains:
 
 33
 Where there are two sureties, the usual relation is cosuretyship, but by agreement between them or because of the equities of the situation, one of them as between themselves, may be liable for the entire loss caused by the default of the principal and hence not a cosurety. Where this is true, there are two interlocking tripartite relationships. The creditor has two sureties for his principal, but between the sureties one of them is a principal and the other a surety, that is, the former rather than the latter should perform. The former is a surety as to the principal debtor but is a principal as to the other surety. In view of the dual position of the former, he is called the principal surety. The surety to whom the principal surety is in the relation of principal is the subsurety.
 
 
 34
 The district court pointed out that it was well-settled in Virginia that if the principal and creditor modify their contract without the consent of the surety, the surety is discharged if the modification materially increases the risk. Kirschbaum v. Blair, 98 Va. 35, 34 S.E. 895 (1900). That principle of law remains very much alive today. In People v. Smith, 645 P.2d 864 (Colo.App.1982), the surety secured a $400 bail bond for a misdemeanor charge pending against the defendant. As a result of the same episode, the defendant was later charged with a felony, which carried a mandatory prison sentence. The defendant then obtained another $600 bond from another surety, and the first surety was not advised of the new charge or of the application of the bond to the new charge. Both bonds were forfeited when the defendant failed to appear, and the first surety appealed. The court reversed, stating
 
 
 35
 When one undertakes a surety obligation, the surety undertakes a calculated risk, and events which materially increase that risk without consent of the surety terminate the obligation of the bond. (citations omitted).
 
 
 36
 Id. at 865.
 
 
 37
 In State v. Weissenburger, 189 N.J.Super. 172, 459 A.2d 693 (1983), the surety executed a bail bond conditioned upon the defendant's not leaving the jurisdiction and appearing for trial. Subsequently, the defendant entered into an agreement with the prosecuting attorney, whereby the latter agreed to dismiss charges against the defendant and relocate him in exchange for his agreeing to assist in obtaining evidence against suspected distributors of controlled substances. The defendant fled the jurisdiction after assisting in one investigation, and the bond was forfeited. The surety was never advised of the agreement between the defendant and the prosecutor. The surety appealed. The court reversed and remanded, stating
 
 
 38
 It is well settled that a bail bond constitutes a surety agreement in which the defendant is the principal and the creditor is the State. Consequently, the legal principles applicable to the construction and consequences of surety agreements are equally applicable to bail bonds.... It is also well settled that if the principal and creditor modify their contract without the consent of a compensated surety, the surety will be discharged if the modification materially increases the risk.... (citations omitted).
 
 
 39
 Id. 459 A.2d at 696.
 
 
 40
 The Restatement of the Law of Security Sec. 128(a) (1941) provides:
 
 
 41
 Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment
 
 
 42
 (a) the surety, other than a compensated surety, is discharged unless the modification is of a sort that can only be beneficial to the surety ...
 
 
 43
 Here, Deisher was an uncompensated surety, and the modification was not of a sort that was beneficial to him.
 
 
 44
 In Reese v. United States, 76 U.S. (9 Wall.) 13, 22, 19 L.Ed. 541, 545 (1870), the Court stated:
 
 
 45
 There is ... an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way interfere with ... this covenant between ... [the principal and his sureties in a bail bond], or impair its obligation, or take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.
 
 
 46
 That principle stated in Reese remains the law. See, e.g., United States v. Galvez-Uriarte, 709 F.2d 1323 (9th Cir.1983)), where the court, citing Reese as authority, applied that principle to hold that a surety on a bail bond was released from his obligation thereon, because the government had acted materially to increase the risk of the surety without the surety's consent.
 
 
 47
 That Deisher technically was not a surety on Kosko's bond does not affect the district court's decision of this third issue. By the purported assignment, itself a security agreement, Deisher, as surety, secured appellants' obligation on Kosko's bond. As above quoted from State v. Weissenburger, 459 A.2d at 696, "the legal principles applicable to the construction and consequences of security agreements are equally applicable to bail bonds." Of course, the converse of that proposition is true. Accordingly, when the government and Kosko and appellants consented and agreed to Kosko's release on the bond and to permit it to apply as Kosko's appearance bond in respect to the additional "continuing criminal enterprise" charge in the indictment, thereby increasing Deisher's risk, without Deisher's having consented to their agreement, Deisher was thereby relieved of his obligation under the purported assignment as a matter of law.
 
 
 48
 We agree with the decision reached by the district court on that third issue.
 
 
 49
 We therefore hold that the district court committed no error in any of its findings and adjudications, and its decision is
 
 
 50
 AFFIRMED.
 
 
 
 [1]
 Roberts testified that the Agent of Allstate Insurance told Deisher and him that the agent did not know whether Deisher's rights under the annuity policy were assignable
 
 
 [2]
 Roberts also collected from Kosko a premium of $7,500 as consideration for the appellants' signing Kosko's bond as sureties. In the assignment, Deisher further agreed to cause appellants to be named as the beneficiary of the annuity policy in lieu of his estate and to give Allstate Life and Allstate Insurance written notice of that change, but he did not do so
 
 
 [3]
 Nothing in the record indicates that the district court was aware of the existence of the assignment at the time of Kosko's arraignment and release on the bond
 
 
 [4]
 Roberts' testimony indicated that Deisher had that knowledge shortly after Kosko was arraigned on the indictment and before he failed to appear. Deisher denied that he did so. An Assistant United States Attorney testified that when Roberts and Deisher were in her office after Kosko had failed to appear, she disclosed that knowledge to Deisher in Roberts' presence, whereupon Deisher manifested surprise thereat and enquired why he had not been theretofore informed thereof
 
 
 [5]
 The court nevertheless continued Kosko's trial for some months to afford appellants an opportunity to apprehend Kosko