In re GRANATI, Debtor.

Jacqueline Granati, Appellant,

v.

Stone Street Capital, Inc., Stone Street Services, Inc., Appellees.

Civ. Nos. 02–1515–A, 02–1516–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 24, 2002.

Jacqueline W. Granati, Staford, VA, pro se.

Carlton T. Obecny, Elyse L. Strickland, Selzer, Gurvitch, Rabin & Obecny, Chtd., Bethesda, MD, for appellees.

### *MEMORANDUM OPINION*

CACHERIS, District Judge.

This matter is before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Virginia.

### I. Background

Appellant Jacqueline Granati ("Granati") is a widow residing in Stafford County, Virginia. Granati's husband died in an auto accident in 1983 and his death gave rise to a wrongful death lawsuit against a trucking company involved in the accident. Eventually, this wrongful death lawsuit was settled on February 14, 1985.

As a condition of that settlement agreement, Protective Insurance Company ("Protective") agreed to "arrange" to pay Granati $800.00 per month, commencing on March 1, 1985 and continuing until February 1, 2015 or until Granati died, whichever date later occurred. As security for this agreement, Protective agreed that it would purchase an annuity contract from a life insurance company and in exchange, its obligations would be discharged *pro tanto* by payments made by the insurer

under the annuity contract. So, on May 1, 1985 Protective purchased an annuity contract from First Colony Life Insurance Company ("First Colony"). The First Colony contract states that Protective is the owner of the contract and may control and direct the payments made under the contract. Of course, Protective designated Granati as the beneficiary under the annuity contract and Granati received the monthly payments without incident for twelve years.

However, in March 1997, Granati entered into an agreement with Stone Street Capital, Inc. and Stone Street Services, Inc. (collectively, "Stone Street").[1] After several discussions with Stone Street representatives, on March 21, 1997, Granati agreed to sell her interest in the remaining 216 annuity payments, guaranteed until May 1, 2015, to Stone Street in exchange for a lump sum of $52,000.00.

By May 1, 1997, Granati had taken her $52,000.00 and after paying some bills and purchasing some new personal items, she invested in a new mobile home and a new taxi cab business. For their part, Stone Street had created a rather elaborate organ by which the monthly annuity payments continued to be received in the name of Granati. In fact, As part of this agreement, Granati directed that the payments no longer come to her residence in Virginia, but rather to a post office box in New York. When the payments arrived in New York, the checks were indorsed by a rubber stamp signature, created from a specimen signature that Granati was required to provide to Stone Street. After this "indorsement" the annuity checks were deposited into a lockbox account solely under the control of Stone Street. Ostensibly, this mechanism settled any fears that the parties may have had that the assignment of the annuity payment was not up to legal muster.[2]

But by March 1999, Granati's dreams and fortunes had collapsed. Granati's taxi business failed not long after it started and her health worsened soon thereafter. Ultimately, in March 1999, Granati directed First Colony to stop sending payments to the lockbox account and to start sending the payments to an account under her control. Although, Granati did send two payments of $200.00 to Stone Street, she kept the rest of the annuity payments and applied them for her own personal use and benefit.

On September 29, 1999, Stone Street filed a four-count bill of complaint in the Circuit Court for Prince William County against Granati in connection with the diversion of the annuity funds. On October 27, 2000, the Prince William Circuit Court granted Stone Street's motion for partial summary judgment and ordered Granati to deposit the annuity funds from First Colony into an account under the control of Stone Street.

But Granati never complied with this order. Rather, Granati filed for Chapter 7 bankruptcy protection on November 4, 2000. On September 1, 2001, the bank-

---

**1.** Stone Street Capital, Inc. is the company that purchases the annuity agreements. Stone Street Services, Inc. is the company that administers those same agreements. These two separate entities have but one common interest in this litigation—the right to receive payment under the annuity contract. Notably, the brief submitted by both parties in these cases is identical in both case number 02–1515 and 02–1516. For this reason, these cases are decided identically in this one opinion.

**2.** These fears are also evident in the fact that Stone Street had Granati sign a "seller's affidavit" in which Granati agreed, *inter alia,* that the transfer of her interest in the annuity agreement may violate assignment clauses contained in that agreement.

ruptcy court granted Stone Street's motion for summary judgment in part and held that Stone Street was the equitable owner of the payments stream from First Colony and that this right was not a claim which could be discharged buy the debtor's Chapter 7 filing. Further, the bankruptcy court, after conducting a bench trial, determined that Stone Street's claims for breach of contract, breach of fiduciary duty and fraud should be discharged in bankruptcy, but that Stone Street's claim for conversion would not be discharged and that the defendant was liable for $11,200.00, exclusive of interests and costs, on that claim.

This appeal followed and raises two general issues: (1) whether the bankruptcy court erred in holding that Stone Street was the equitable owner of the First Colony annuity payments and that these payments were not a "claim" subject to discharge under the Bankruptcy Code; and (2) whether the bankruptcy court erred in holding Granati liable for conversion.

## II. Standard of Review

■ A district court has jurisdiction over an appeal from a United States Bankruptcy Court pursuant to 28 U.S.C. § 158(a). *See Educational Credit Management Corp. v. Buchanan*, 276 B.R. 744, 749 (N.D.W.Va.2002). A bankruptcy court's conclusions of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *Id.* (citing *In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999)).

## III. Analysis

### A. Stone Street's Interest in the First Colony Annuity Payments

The initial issue in this case is whether Stone Street's interest in annuity pay-

ments from First Colony is a "claim" subject to discharge in bankruptcy. Granati asserts that Stone Street has no interest whatsoever, claim or otherwise, in her right to receive payments from First Colony. In contrast, Stone Street states that it has either a legal, equitable or secured party's interest in the payments from First Colony, neither of which qualify as a claim under the Bankruptcy Code. The bankruptcy court stated that Stone Street held an equitable interest in the First Colony payments, which was not a claim subject to Chapter 7 discharge.

■ The analysis necessarily begins by asking whether Stone Street had an interest in Granati's right to receive payments from First Colony. Initially, the Court observes that Granati and First Colony were never parties to any one agreement. Rather, Granati and Protective agreed that Protective was required to enter a contract with a third party for the benefit of Granati. Indeed, Protective and First Colony entered such an agreement, but Granati was never party to that agreement, and Granati never acquired any right to control payments made pursuant to that agreement. Rather, Protective and First Colony agreed that the ultimate decision on direction of the annuity fund payments lay with Protective, the "owner" of the annuity contract.[3] Of course, according to the terms of the wrongful death settlement agreement between Protective and Granati, Protective was contractually bound to apply those funds for the benefit of Granati.

■ "It is axiomatic that one may not sell, assign or hypothecate that which [s]he does not own." *Allstate Ins. Co. v. Am. Bankers Ins. Co. of Florida*, 882 F.2d 856, 859 (4th Cir.1989); *see also* Restatement

---

3. Specifically, the contract stated that the "Owner [Protective] has the right at any time to designate to whom annuity payments will be made."

(Second) of Contracts § 317 cmt. a, illus. 2. In fact, in *Allstate* the Fourth Circuit had occasion to visit the particular issue of whether a beneficiary of an annuity contract had validly assigned rights under that contract. *See Allstate*, 882 F.2d at 859–60. In *Allstate*, an individual and an insurance company agreed to a structured settlement of a claim arising from a personal injury incident. *See id.* at 858. As part of this structured settlement, the insurance company was required to purchase an annuity for the benefit of the injured party. *See id.* Furthermore, the annuity policy in *Allstate* plainly stated that the insurance company was the "owner" of the annuity and that the injured party/beneficiary therefore had no ability to assign the annuity. *See id.* at 859–60.

In comparison, the relevant facts of this case are indistinguishable. The annuity plainly and clearly states that it is owned by Protective. Likewise, because Protective owns the annuity, Granati has no legal right in the annuity to assign. Therefore, the bankruptcy court was correct in holding that any alleged legal assignment of the annuity by Granati to Stone Street was invalid.

■ However, the Fourth Circuit also recognized that despite the lack of a valid legal assignment of annuity rights, a party may have an equitable right of specific performance of a promise to assign payments due under an annuity contract.[4] *See id.* at 860 (citing Restatement (Second) Contracts § 326(1) cmt. a). Specifically the Fourth Circuit observed that

> specific performance [is] an equitable remedy, application thereof [is] in the sound discretion of the court, *Haythe v. May*, 223 Va. 359, 288 S.E.2d 487 (1982), and that equity [will] not decree specific

performance of a contract that is "founded in fraud, imposition, mistake, undue advantage, or gross misrepresentation, or where . . . it would be unconscientious to enforce it," *Clay v. Landreth*, 187 Va. 169, 45 S.E.2d 875, 879 (1948).

*Allstate*, 882 F.2d at 860.

The bankruptcy court also recognized this equitable right and conducted a thorough analysis and balancing of the equities in this matter to determine whether an equitable assignment should be applied to the facts of this case. *In re Granati*, 270 B.R. 575, 582–85 (Bankr.E.D.Va.2001). Indeed, it is from the equitable analysis of the bankruptcy court that Granati draws the core of her argument on appeal. Specifically, Granati claims that the bankruptcy court erred in allowing Stone Street to avail itself of the advantages of equity, when Stone Street's actions in forming the contract were anything but even-handed.

To this end, Granati claims that the elaborate scheme, involving (1) the lockbox account; (2) a specimen signature that was reproduced to indorse the checks; (3) the seller's affidavit; and (4) Granati's submitting a change of address form to Protective and First Colony evidences the fact that Stone Street knew that the annuity was non-assignable and it used deceptive means to obtain an assignment of the annuity contract.

In fact, Granati's argument resonates well with this Court. In particular, it strains credulity to believe that Stone Street, which is fully engaged in the business of purchasing annuity contracts, believed that it was purchasing the annuity rights directly from Granati. Indeed, if such a belief truly were held, then Stone Street would have no need to establish the elaborate machination to dupe Protective

---

**4.** However, the Fourth Circuit did not apply the equitable assignment doctrine to the facts

in *Allstate*, because it believed that the equities did not favor such an application. *See id.*

and First Colony into believing that Granati was still receiving payments. Rather, it is evident that Stone Street knew that its purported assignment from Granati rested on dubious legal grounds, and so it implemented the many measures detailed above as part of a concerted, and frankly less than forthright, efforts to assure success of the contract.[5]

Thus, Granati raises the rather appropriate question of why a party, who employs deceptive means to shore the foundation of a contract it suspects may be of questionable validity, should have its duplicitous bargain saved by the tools of equity. Indeed, the bankruptcy court also struggled with this question, but eventually decided the issue based on the controlling equitable factor that, ultimately, Stone Street carried its end of the bargain. Specifically, the bankruptcy court noted that Stone Street paid the rather significant sum of $52,000.00 to Granati in accord with its obligations under the agreement. Therefore, if Stone Street would not receive its end of the bargain—the $800.00 monthly payments until 2015—Granati would be unjustly enriched.

This Court agrees with the bankruptcy court, that the performance by Stone Street of its obligations under the agreement and the resulting unjust enrichment that would occur if this Court declined to exercise its equitable powers, indicates that Stone Street is entitled to equitable relief under these circumstances. In so holding, the Court rejects as unpersuasive Granati's secondary claims that the scales of equity tip in her favor because (1) the bargain itself was unconscionable and (2) she is now destitute.

The first argument invokes the principle of unconscionability, which this Court has defined as "something that is lying outside the limits of what is reasonable or acceptable, or shockingly unfair, harsh, or unjust." *In re Malloy,* 155 B.R. 940, 945 (E.D.Va.1993) (Payne, J.) (internal quotation marks omitted) (quoting *In re Quinn,* 102 B.R. 865, 867 (Bankr.M.D.Fla. 1989)). As the bankruptcy court noted in footnote eight of its opinion, the fact that the terms of the contract were "quite favorable to Stone Street is hardly open to question." *In re Granati,* 270 B.R. at 584 n. 8. In fact, the bankruptcy court went on to specify that had Stone Street employed a discount rate of 8%—the rate specified by the Virginia Code to calculate the present value of a life estate—it would have arrived at a figure of $91,432.48 as the 1997 present value of the annuity, not the $52,000.00 contained in the Stone Street–Granati agreement.

But while Stone Street may have received the better end of this bargain, this bargain is not so one-sided that it can be said to lie "outside the limits of what is reasonable or acceptable[.]" Moreover, the contract does not rise to a level of unfairness or injustice such that this Court should restrict the availability of equitable relief for the party receiving the better end of the bargain.

Secondly, Granati's contention that she is now destitute and in greater need of the money than Stone Street is certainly honest and rendering, however, it gives rise to

---

5. Moreover, the Virginia legislature has also recognized the potential for fraud, deception and abuse in the formation of factoring contracts. Specifically, on July 1, 1999, the legislature enacted a statute that requires several important disclosures and ultimately court approval before structured settlement payments may validly be assigned to a factoring company such as Stone Street. *See* Va.Code Ann. § 59.1–475. Of course, that Act does not apply to the case at bar because the contract was formed in this case in March 1997, over two years before the effective date of this statute.

no legal basis for a decision to deny equitable relief for Stone Street. As the bankruptcy court found, and this Court agrees, "no rule of equity . . . permits a sale to be rescinded simply because the seller, after spending the money received, needs the asset back." *In re Granati*, 270 B.R. at 584.

In sum, the Court finds that the purported assignment of the annuity contract from Granati to Stone Street was legally invalid, because Granati was not the owner of the annuity contract. However, the Court will approve the use of equity to find that the purported assignment from Granati to Stone Street was sufficient to make Stone Street the equitable owner of the annuity contract. In making this decision, the Court observes that while Stone Street's behavior in obtaining the contract was "shady" its performance of its obligations to Granati under the contract qualifies it for equitable relief. However, this does not end the Court's analysis. Having determined that Stone Street is the equitable owner of the annuity contract, the Court now decides whether Stone Street's assertion of rights to those annuity payments is a "claim" which may be discharged under Chapter 7.

■ In general, a discharge of a debtor under Chapter 7 of the Bankruptcy Code, relieves the debtor from liability on any pre-petition "claim." *See* 11 U.S.C. § 727(b). Indeed, the Bankruptcy Code states that

(5) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether

or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. § 101(5). Moreover, the definition of "claim" under this section is broad and expansive and the Supreme Court has repeatedly stated that congressional intent in defining the term "claim" was to give as broad a meaning to that term as was possible. *See e.g., Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

The bankruptcy court held that Stone Street's right to future payment as equitable owner of the annuity payments did not fall within this broad definition of a "claim" under section 101(5) and thus concluded that Stone Street's rights to future payments were not discharged under section 727(b). In her brief, Granati states no specific grievance with this portion of the bankruptcy court's findings. Likewise, this Court agrees with the finding of the bankruptcy court that the equitable enforcement of Stone Street's rights to future payments are property interest and not claims subject to discharge under the bankruptcy code. *See In re Granati,* 270 B.R. at 585–87, and cases cited therein.

Therefore, this Court concludes that the bankruptcy court was correct in holding that the future annuity payments due to Granati were legally owned by Protective and equitably owned by Stone Street. As such, Stone Street's equitable right to the payments was a property interest in those payments, not a claim to the payments that is dischargeable under section 727. Consequently, this Court agrees with the bankruptcy court that Stone Street possessed a non-dischargeable equitable ownership of future annuity payments contractually owed to Granati.

### B. Judgment of Conversion against Granati

On February 7, 2002, the bankruptcy court completed its disposition of this matter by holding a bench trial on the remaining issues between Granati and Stone Street. The only of those issues on appeal before the Court today is whether Granati is liable to Stone Street for conversion for the annuity payments she retained and exhausted for her personal use and benefit after she filed her petition for bankruptcy. Specifically, Granati appeals the bankruptcy court's decision holding her liable for conversion of the monthly annuity payments she received between December 2000 and January 2002.

The bankruptcy court's decision was based solely on whether Granati committed the common law tort of conversion. In Virginia, the tort of conversion requires proof of the following elements: (1) wrongful exercise of authority or control; (2) over another's personal property; (3) depriving it of its possession or other right or incident of ownership. *See United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 440 S.E.2d 902, 905 (1994) (citing *Universal C.I.T Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359, 365 (1956)).

The basis for Granati's challenge to the judgment against her on the conversion count is that she could not have converted the annuity as against Stone Street, because Stone Street had no right to the annuity payments. However, as both the bankruptcy court, and now this Court, have explained, Stone Street was the equitable owner of the right to future annuity payments. Indeed, Granati deprived Stone Street of its equitable ownership rights when she exercised control over the payments and used them for her own personal purposes. In sum, this Court agrees with the finding of the bankruptcy court, that Granati is liable to Stone Street for the tort of conversion and the bankruptcy court's ruling will be affirmed in that respect.

### IV. Conclusion

For the foregoing reasons this Court will affirm the decision of the bankruptcy court. Specifically, this Court affirms both the September 1, 2001 and February 7, 2002 decisions of the bankruptcy court in this matter. An appropriate Order will issue.