**SETTLEMENT FUNDING, LLC d/b/a Peachtree Settlement Funding, as Seller/Servicer for Peachtree Finance Company, LLC, Plaintiff,**

v.

**Rose GARCIA, Transamerica Occidental Life Insurance Company and United States of America, Defendants.**

**Civil Action No. W–04–CA–339.**

United States District Court,
W.D. Texas,
Waco Division.

Dec. 13, 2006.

Earl S. Nesbitt, Nesbitt, Vassar, McCown, & Roden, L.L.P., Addison, TX, for Plaintiff.

Chad Edward Robinson, Winstead P.C., Joel W. Reese, Winstead Sechrest & Minick, Dallas, TX, for Defendant.

Danny Wash, Wash & Thomas, Waco, TX, Pro se.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, JR., Chief Judge.

Before the Court are the following motions: (1) Plaintiff's Motion for Summary Judgment; (2) Plaintiff's Motion for Default Judgment Against Defendant Rose Garcia; (3) United States of America's Motion for Summary Judgment; and (4) Transamerica Occidental Life Insurance Company's Motion for Partial Summary Judgment for Attorney's Fees. The Court, having considered these Motions, responses, pleadings, and applicable legal authority finds that (1) Plaintiff's Motion for Summary Judgment should be denied; (2) Plaintiff's Motion for Default Judgment Against Defendant Rose Garcia should be denied; (3) United States of America's Motion for Summary Judgment should be granted; and (4) Transamerica Occidental Life Insurance Company's Motion for Partial Summary Judgment for Attorney's Fees should be denied as against the United States and additional briefing required to make a determination as against the annuity payments.

### I. BACKGROUND

This is an action for breach of contract, conversion, and unjust enrichment alleged by Plaintiff Settlement Funding, LLC ("Settlement Funding") against Garcia regarding loan agreements between Rose Garcia ("Garcia") and Settlement Funding. This is also an interpleader action in which Settlement Funding asserts a right to receive payments under an annuity contract purchased by the United States of America ("United States") from Transamerica Occidental Life Insurance Company ("Transamerica") for the benefit of Garcia and her children.

### A. Undisputed Facts

The undisputed facts establish the following:

In 1992, Garcia settled a lawsuit against the United States by way of a structured settlement. Pursuant to an Amended Consent Judgment entered by the United States District Court for the Southern District of Texas in Civil Action No. C–90–174, the United States purchased the annuity contract ("the annuity"), for the benefit of Garcia and her children, with $300,000 of her total recovery. The annuity issued on March 14, 1993 and states that the "owner" is the "United States of America." The "Change of Designation" paragraph in the annuity states: "The owner has the right at any time to designate to whom annuity payments will be made. A change of designation may only be made by filing a satisfactory written notice with the Company...." This annuity provided for certain future payments to be made to Garcia, which are known as the "Periodic Payments." Further, Garcia is designated to receive the Periodic Payments. The annuity specifically states: "Beginning January 1, 1993, $1,160.00 per month, increasing at 2.000% compounded annually, for life with three hundred sixty (360) payments guaranteed; $60,000 payable September 1, 1993 guaranteed."

In January 2000, Garcia entered into a loan agreement, secured promissory note, and security agreement with WebBank ("WebBank") for $46,011.00 with "Cash Collateral" listed as "360 monthly payments of $1,160.00 commencing January 1,1993 through and including December 1, 2022. (with a 2% increase every January 1). Lump sum payment of $60,000 due September 1, 1993." The "Pledge of Collateral" in the loan agreement states: "Concurrently with the execution and delivery of this Agreement, Borrower pledged and collaterally assigned to Lender a security interest in Borrower's right, title and interest in and to the Collateral." In August 2000, Garcia entered into another loan agreement, secured promissory

note, and security agreement with Web-Bank for $31,772.40 listing the same "Cash Collateral" as the January 2000 loan and the same statement in the "Pledge of Collateral." WebBank filed a UCC financing statement relative to its security interest on both loans. WebBank assigned all of its right, title and interest in both loan agreements, secured promissory notes, and security agreements to Peachtree Finance Company, LLC, which contracted with Settlement Funding to service the loan documents. Garcia did not pay the December 1, 2000 payment and all subsequent payments on both loans. Based on an Affidavit of General Counsel for Settlement Funding, as of February 15, 2006, Settlement Funding is due $395,954.70 in principal and interest for both loans with interest accruing at $45.25 per day for both loans.

## B. Procedural Background

On October 20, 2004, Plaintiff Settlement Funding filed its Complaint. Settlement Funding's Complaint asserts the following claims against Defendant Garcia: (1) breach of contract and suit on promissory note; (2) conversion; (3) unjust enrichment; (4) exemplary damages; and (5) reasonable and necessary attorney's fees. Settlement Funding's Complaint asserts the following claims against Garcia and Defendant Transamerica: (1) foreclosure and enforcement of security interest; (2) declaratory judgment that Settlement Funding is entitled to enforce its security interest in the Periodic Payments and is entitled to receive the Periodic Payments directly from Transamerica. Settlement Funding originally filed claims against the United States but voluntarily dismissed those claims on March 3, 2005.

On February 22, 2005, Transamerica filed a counterclaim against Garcia, Settlement Funding, and the United States for interpleader of payments in dispute and all future Periodic Payments. On September 26, 2005, the Court intepled $26,666.01 and all future Periodic Payments due during the period of this litigation ("Interpled Funds") into the Registry of the Court. Settlement Funding filed a counterclaim to Transamerica's interpleader claim seeking a declaratory judgment that it has the rights to the Interpled Funds and future Periodic Payments to fully satisfy Garcia's loans and seeking attorney's fees. The United States filed a counterclaim to Transamerica's interpleader claim seeking a declaratory judgment that (1) the United States retained the exclusive right to designate to whom the annuity payments would be sent to; (2) the purported "assignment" of the United States' rights under the annuity contract from Garcia to Settlement Funding is void and unenforceable; and (3) Transamerica forward the Interpled Funds to Garcia as directed by the United States. In response, Settlement Funding asserted the affirmative defenses: (1) United States has no standing because it has no claim to the Periodic Payments and it was not a party to the loan agreements between Settlement Funding and Garcia; (2) Uniform Commercial Code prohibits the relief sought by the United States; (3) *res judicata* based on the Kentucky Order; and (4) doctrine of release.

## II. SUMMARY JUDGMENT

### A. Standard of Review

■ Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A disputed material fact is genuine if the evidence is such that a jury could return a verdict for the non-moving party. *Anderson v. Liberty Lob-*

*by,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The initial burden to demonstrate the absence of a genuine issue concerning any material fact is on the moving party. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden can be satisfied by pointing out to the district court that there is an absence of evidence to support an essential element of the non-moving party's case. *Id.* Upon such a showing, the burden shifts to the non-moving party to establish that there is a genuine issue. *Id.* at 324, 106 S.Ct. 2548. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. "If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex. 1984).

### B. United State's and Settlement Funding's Motions for Summary Judgment

The United State's seeks summary judgment on its counterclaim to the interpleader requesting the Court to order Transamerica to issue the annuity checks to the person designated by the United States who is Garcia.

Settlement Funding seeks summary judgment on its claims against Garcia and Transamerica and with respect to the counterclaim filed by the United States to Transamerica's interpleader claim. Settlement Funding requests the Court to order Transamerica to issue its annuity checks directly to Settlement Funding instead of Garcia.

### 1. Kentucky Order

█ On November 18, 2004, the United States District Court for the Western District of Kentucky entered an Order (the "Kentucky Order") in a class action case, *Commonwealth General Assignment Corporation et al. v. Settlement Funding, LLC,* No. 3:00CV–565–R (the "Class Action"). The Kentucky Order approved a settlement in the Class Action. Settlement Funding was a named party and Garcia was a member of the "Settlement Class." The United States was not a party to the Class Action. The Class Action settlement provided that Settlement Funding forego certain payments to which it would have otherwise been entitled under the terms of the loan agreements. It also provided a process for the designation of the date and amount of Periodic Payments due to Garcia under the annuity to which Settlement Funding is (allegedly) entitled. According to Settlement Funding, it is entitled to receive and collect all of the Periodic Payments, including all funds on deposit with the Court, through December 15, 2087.

Settlement Funding argues that the Kentucky Order is a final judgment and is binding on both Settlement Funding and Garcia. The United States argues that it is the owner of the annuity at issue in the Kentucky Order, but the Kentucky Court did not have jurisdiction over the United States. In the absence of a waiver of sovereign immunity, a court lacks subject matter jurisdiction over the United States. *Jeanmarie v. United States,* 242 F.3d 600, 602 (5th Cir.2001). Thus, the Court finds that the Kentucky Order is not binding or enforceable against the United States regarding the annuity payments to Garcia.

### 2. Parties Making Claims to Interpled Funds

█ Settlement Funding argues that no other party has made a claim to the Interpled Funds. Although the United States does not make a claim that the Interpled Funds should be directed to it, the United States does make a claim regarding the Interpled Funds in its counterclaim where it expressly requests confirmation of its contract rights and that Garcia is entitled to the Interpled Funds and annuity payments based on its designation. Thus, the United State's claim regarding the Interpled Funds will be reviewed.

### 3. Ownership of Annuity, Security Interest, and Assignment

#### a. Arguments

Settlement Funding seeks summary judgment to foreclose on its alleged security interest through an order from the Court that Transamerica should send the annuity payments directly to Settlement Funding. Settlement Funding argues that the loan transactions were not "assignments" but secured loans (i.e., general intangibles). It argues that it has a security interest in the annuity payments and it is entitled to enforce its security interest in the Periodic Payments. Settlement Funding argues that even though Garcia does not own the annuity, she owns the contractual right to receive the Periodic Payments. Thus, it argues that Garcia has the right to pledge the payment rights as collateral security for a loan, and Settlement Funding has the right to enforce its security interest as a secured creditor.

The United States asserts that the annuity policy clearly states that only the owner (the United States) has the right to order Transamerica to redirect the annuity payments before they reach Garcia. It argues that Settlement Funding could not have been granted a security interest in the contractual right to designate annuity payments because Garcia did not own that right—the United States solely owned that right. The United States further argues that Garcia could not assign the right to designate the payee under the annuity. It states that Garcia is free to turn over those payments to Settlement Funding or any third party upon receipt. Based on who Settlement Funding sued, the United States further argues that it is clear the issue in this case is not just the payments, but which party has the right to designate to whom the annuity payments may be sent. The United States asserts that allowing Settlement Funding to undo the Amended Consent Judgment brings many risks: (1) violation of the finality and integrity of the court's final judgment in the 1992 tort case; (2) violation of the integrity of the United States' contractual rights; and (3) further liability for the United States. The United States argues that Settlement Funding is seeking to seize the United States' contract rights for itself in such a way as to make the United States its collection agent on its flawed contract with Garcia. Lastly, the United States argues that because the Amended Consent Judgment also involved the claims of Garcia's children (minors), it should not be undone by subsequent actions of other parties.

#### b. Relevant Law

In *Allstate Insurance Co. v. American Bankers Insurance Co. of Florida,* the Fourth Circuit held that the annuitant of an annuity, brought pursuant to a structured settlement, could not validly assign his rights to the annuity payments as security for a bond. *Allstate Ins. Co. v. American Bankers Ins. Co. of Florida,* 882 F.2d 856, 859–60 (4th Cir.1989). The Court specifically stated:

> It is axiomatic that one may not sell, assign or hypothecate that which he does not own. [Annuitant] had no own-

ership in the annuity itself. The annuity policy plainly stated, as the district court pointed out, that Allstate Insurance was the owner of the annuity. Thus, [annuitant] could not lawfully assign that annuity, wherefore the purported assignment did not constitute a valid legal assignment.

Moreover, the assignment did not constitute a valid legal assignment, because it did not operate as a transfer of a right of [annuitant's] existing at the time the assignment was executed, but rather sought to transfer proceeds to which he was to become entitled in the future, and even then the transfer thereof was not to become effective until and unless [the] bond was forfeited.

*Id.*

In *In re Granati*, Protective (the tortfeasor's insurer) purchased an annuity from First Colony pursuant to Granati's settlement agreement for a wrongful death lawsuit. *In re Granati*, 307 B.R. 827, 828 (E.D.Va.2002). The annuity contract stated that Protective was the owner and the owner controls and directs the payments made under the contract. *Id.* Granati was designated to receive the monthly payments. *Id.* Subsequently, Granati agreed with Stone Street Capital to sell her interest in her remaining annuity payments. *Id.* The court observed that Granati and First Colony were never parties to any one agreement; rather, Granati and Protective agreed that Protective would enter a contract with a third party for the benefit of Granati. *Id.* at 830. The court noted that Protective and First Colony did enter such an agreement (the annuity contract); however, Granati was never a party to the annuity contract and Granati never acquired any rights to control payments made pursuant to the annuity contract. *Id.* Protective and First Colony did agree "that the ultimate decision on direction of the annuity fund payments lay with Protective, the 'owner' of the annuity

contract." *Id.* Further, according to the settlement agreement, Protective was contractually bound to apply those funds for the benefit of Granati. *Id.* Relying on *Allstate*, the bankruptcy court held that because Protective owns the annuity, Granati had no legal right in the annuity to assign. *Id.* at 830–31.

Similarly in *In re Simon*, Cincinnati Insurance Company (the tortfeasor's insurer) purchased an annuity from First Colony pursuant to Simon's settlement agreement for personal injury claims. *In re Simon*, 99 B.R. 781, 781–82 (Bankr.N.D.Ohio 1989). The annuity contract stated that Cincinnati is the owner, and First Colony will pay the annuity payments to Cincinnati "or such person(s) as Owner may designate." *Id.* at 782. In this bankruptcy proceeding, the Trustee demanded that First Colony make the annuity payments directly to the Trustee, and First Colony refused stating that it has not been instructed by Cincinnati to redirect the payments. *Id.* The bankruptcy court noted that Simon's rights under the settlement are against Cincinnati, and Simon has no rights against First Colony. Thus, the court held that "First Colony must act at the direction of Cincinnati and make payments under the annuity policy to whomever Cincinnati directs." *Id.*

The Third Circuit upheld an assignment of the right to receive periodic payments under a *settlement agreement*. *Western United Assurance Co. v. Hayden*, 64 F.3d 833, 843 (3d Cir.1995). The debtor argued that the assignee (of the obligation to make periodic payments) had no obligation to make periodic payments independent of the annuity. *Id.* at 841. The Court stated:

"The [debtor's] argument reveals a misunderstanding of structured settlements. If the parties intended to structure the transaction pursuant to I.R.C. §§ 104

and 130, then they must have intended that the annuity be merely an accommodation and that [the assignee] have a general obligation to make the periodic payments. Furthermore, the [debtor's] interpretation would render the assignment and assumption agreement meaningless. If the sole obligation under the settlement agreement was to purchase the annuity, there would be no point to inserting [the assignee] into the transaction; the [tortfeasors] could have purchased the annuity themselves and thereby fulfilled all their obligations. It is thus apparent that the [tortfeasors] executed the assignment because under the settlement agreement they had a continuing obligation that they wished to assign, namely, the obligation to make periodic payments. We conclude, therefore, that the settlement agreement gave [debtor] a legal right to receive monthly payments [ ]."

*Id.* The Court held that the debtor effectively assigned to the lender her right to receive periodic payments provided for in the settlement agreement, and that the lender now has a right to receive the periodic payments from the assignee. *Id.* at 843.[1] The Third Circuit in *Western United* specifically stated:

> With respect to the annuity contract, [the lender] concedes that [the debtor] did not have a legally assignable right under this contract. [The lender] and [the debtor] agree that [the assignee] is the undisputed owner of the annuity. As owner, the annuity contract vests [the assignee] with the right to change the payee and to direct the annuity payments to whomever it desires. Because [the debtor] did not have an enforceable right to remain as the annuity payee, [the lender] concedes that she could not assign a right to receive those payments.

*Id.* at 838.

### c. Analysis

The Court notes an important distinction between the Third and Fourth Circuit opinions. In *Western United,* the Third Circuit, in upholding the assignment of the annuitant's right to periodic payments, relied on the annuitant's rights under the settlement agreement not under the annuity itself. In *Allstate,* the Fourth Circuit, relying on the annuity policy, held that the annuitant could not assign his rights to the periodic payments. Based on the pleadings in this case, the issue for this Court to determine is whether Garcia had any rights to transfer under the annuity contract not whether Garcia had any rights to transfer under the settlement agreement—a distinction that is critical. This Court has found no Fifth Circuit authority addressing this issue, but a recent decision by Judge Henry Hudson in the United States District Court for the Eastern District of Virginia addressed a very similar dispute and interpleader action involving the United States. *See Symetra Life Ins. Co. v. Michael Fentress, et al.,* Civil Action No. 3:05cv289 (E.D.Va. February 6, 2006). In *Symetra,* Novation asserted that Symetra must redirect annuity payments to it

---

1. Other courts have also upheld assignments of the right to receive periodic payments under a *settlement agreement. See In re Brooks,* 248 B.R. 99, 103 (Bankr.W.D.Mich.2000) ("Although the court does not believe that [the debtor] had an interest in the annuity ..., the court nevertheless concludes that [the debtor] assigned his right to receive from [the assignee] the periodic payments under the Release and the Uniform Qualified Assignment and Release."); *Settlement Funding LLC v. Jamestown Life Ins. Co.,* 78 F.Supp.2d 1349, 1360 (N.D.Ga.1999) ("What the [beneficiaries of the settlement agreement] have assigned, as clearly set forth in the various Purchase Agreements, are their rights to receive the Periodic Payments under the Settlement Agreement from an annuity or otherwise.").

under an annuity contract owned by the United States, which it purchased from Symetra as part of a settlement of a tort case filed by Fentress. Subsequent to the settlement, Novation entered into a loan agreement with Fentress by which he "assigned" his rights to payment under the annuity. Novation complied with the Virginia statute and obtained a court order approving the "transfer." Novation then demanded that Symetra send payments directly to it. The United States did not appear in the state court action but advised Symetra that redirection of payments would be a breach of the annuity contract's provisions designating the United States as having the sole authority to designate to whom payments should be sent. Judge Hudson ruled:

> As a matter of law under *Allstate Ins. Co. v. American Bankers Ins. Co. of Florida,* 882 F.2d 856, 859–60 (4th Cir. 1989), because the United States is the owner of the annuity contract in this case, it alone had the right to designate the payee under the annuity contract. Under *Allstate,* the annuity payee "[has] no ownership in the annuity," and therefore "cannot lawfully assign ... proceeds to which he is entitled in the future." *Allstate,* 882 F.2d at 859–60.

*Symetra,* Civil Action No. 3:05cv289, Order (Granting Defendant United States of America's Motion for Summary Judgment and Denying Defendant Novation Capital LLC's Motion for Summary Judgment), at p. 8.

■ The Court finds that Garcia had no legally assignable rights under the annuity contract. *See Western United,* 64 F.3d at 838; *Allstate,* 882 F.2d at 859–60; *Symetra,* Civil Action No. 3:05cv289. The United States is the owner of the annuity and has the sole right to designate the payee. Garcia and Transamerica were never parties to one agreement. According to the Amended Consent Judgment, Garcia and the United States agreed that the United States would purchase an annuity. The United States did purchase an annuity from Transamerica but Garcia was not a party to this annuity contract. Thus, Garcia did not acquire any rights to control the payments made pursuant to the annuity contract. *See In re Granati,* 307 B.R. at 828, 830–31. The United States is contractually bound by the Amended Consent Judgment to apply the annuity funds for the benefit of Garcia. Garcia's rights under the Amended Consent Judgment are only against the United States and not against Transamerica. *See In re Simon,* 99 B.R. at 781–82. The Court finds that Transamerica must act at the direction of the United States and make payments under the annuity policy to Garcia as the United States has directed. Settlement Funding's argument that the U.C.C. controls its alleged security interest is without merit because Garcia did not have any rights to pledge the annuity payments as collateral.

Settlement Funding's Motion for Summary Judgment should be denied, and the United States' Motion for Summary Judgment should be granted.

### C. Transamerica's Motion for Summary Judgment

■ Transamerica asserts that it is an innocent stakeholder in the interpleader action as it makes no claim to the annuity payments—it is simply the issuer of the annuity. Thus, Transamerica seeks recovery of reasonable and necessary attorney's fees against the annuity payments (i.e., Interpled Funds). "[A] district court has the authority to award costs, including reasonable attorney's fees, in interpleader actions." *Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 696 F.2d 359, 364 (5th Cir. 1983). However, awarding attorney's fees is within the sound discretion of the district court, and fees are available when the

interpleader is a disinterested stockholder and is not in substantial controversy with one of the claimants. *Phillips Petroleum Co. v. Hazlewood,* 534 F.2d 61, 63 (5th Cir.1976).

 The United States objects to an award of attorney's fees against the United States. The United States asserts that Transamerica serves as the agent of the United States with regard to the annuity contract, and Transamerica cites no waiver of sovereign immunity for such a claim against the United States. "A court may not 'grant attorneys' fees and costs against the United States in the absence of a congressional or constitutional waiver of sovereign immunity which grants it the authority to do so.'" *Ardestani v. United States Dep't of Justice, INS,* 904 F.2d 1505, 1509 (11th Cir.1990). Thus, Transamerica's motion should be denied as against the United States.

In order to allow the Court to make a determination as to whether Transamerica is entitled to reasonable and necessary attorney's fees against the annuity payments (i.e., Interpled Funds), Transamerica will be ordered to submit briefing that (1) specifically states why it is entitled to fees; (2) provides a detailed accounting of the fees that it expended in litigating this matter; and (3) provides justification for reimbursement of fees from the annuity payments (i.e., Interpled Funds).

### III. DEFAULT JUDGMENT

 If a party fails to plead or otherwise respond to a Complaint within the required time period, it is subject to a motion for default judgment under FED. R.CIV.P. 55. *New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir.1996). "If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Jackson v. FIE Corp.,* 302 F.3d 515, 525 n.

29 (5th Cir.2002). "When a judgment by default is entered, it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded." *Id.* "[A] 'party is not entitled to a default judgment as a matter of right, even where the defendant·is technically in default.'" *Lewis v. Lynn,* 236 F.3d 766, 767 (5th Cir.2001). Default judgments are not favored. *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir.1998). "The entry of a default judgment is committed to the discretion of the district court." *Yu v. Perry,* 82 Fed.Appx. 993, 994 (5th Cir. 2003) (per curiam). "Relevant factors include whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.* Damages in a judgment by default are generally not entered without a hearing "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir.1979). However, an evidentiary hearing is not required if the court deems one is not necessary and proper. *James v. Frame,* 6 F.3d 307, 310 (5th Cir.1993).

 Settlement Funding specifically states that it "seeks a default judgment against Defendant Garcia relative to [it's] claims for declaratory relief and [it's] claims to the Interpleaded Funds in response to the Counterclaim and Cross-claim for Interpleader filed by Transamerica."

First, the Court finds that Settlement Funding is not entitled to a default judgment as to the Interpled Funds against Garcia because the United States has also made a claim to these funds.

Second, having found that Settlement Funding is not entitled to directly receive the Periodic Payments from Transamerica, the Court finds that Settlement Funding is not entitled to default judgment on its declaratory judgment claim or its claim to the Interpled Funds. Thus, Settlement Funding's Motion for Default Judgment should be denied.

### IV. CLAIMS REMAINING AGAINST GARCIA

Settlement Funding's claims against Garcia include (1) breach of contract; (2) conversion; (3) unjust enrichment; (4) exemplary damages; (5) foreclosure and enforcement of security interest and declaratory judgment; and (6) attorney's fees and interest. The Court finds that Settlement Funding should show cause why the Court should not dismiss these pendent state law claims against Garcia. *See Sibley v. Lemaire,* 184 F.3d 481, 490 (5th Cir.1999).

Accordingly, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED.** It is further

**ORDERED** that United States of America's Motion for Summary Judgment is **GRANTED.** It is further

**ORDERED** that Transamerica Occidental Life Insurance Company issue all future annuity checks directly to Rose Garcia. It is further

**ORDERED** that Plaintiff's Motion for Default Judgment Against Defendant Rose Garcia is **DENIED.** It is further

**ORDERED** that Plaintiff show cause why the Court should not dismiss the remaining pendent state law claims against Garcia. It is further

**ORDERED** that Transamerica Occidental Life Insurance Company's Motion for Partial Summary Judgment for Attorney's Fees is **DENIED** as against the United States. It is further

**ORDERED** that Transamerica Occidental Life Insurance Company shall submit briefing within eleven (11) days of the date of this Order that (1) specifically states why it is entitled to reasonable and necessary attorney's fees; (2) provides a detailed accounting of the reasonable and necessary attorney's fees that it expended in litigating this matter; and (3) provides justification for reimbursement of reasonable and necessary attorney's fees from the annuity payments (i.e., Interpled Funds). Plaintiff Settlement Funding and Defendant United States of America will have eleven (11) days to respond to Transamerica's briefing. At that time, the Court will rule on whether Transamerica is entitled to an award of reasonable and necessary attorney's fees and if so, in what amount. It is further

**ORDERED** that the Interpled Funds shall not be distributed by the Clerk of this Court until the matter of Transamerica's requested attorney's fees has been finally resolved. Upon receipt and consideration of the foregoing submissions, the Court will enter a Supplemental Order regarding distribution of the Interpled Funds.