RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0449p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
and SUN LIFE ASSURANCE COMPANY OF CANADA
(U.S.),
    *Plaintiffs-Appellees/Cross-Appellants* (06-6079),

        *v.*

LLOYD F. GILBERT, JR.,
                     *Defendant,*

IRENE K. WOLFE (06-6068); SINGER ASSET FINANCE
COMPANY, LLC (06-6078),
    *Defendants-Appellants/Cross-Appellees,*

STEPHANIE MUSCHLITZ,
              *Defendant-Appellee.*

> Nos. 06-6068/6078/6079

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 02-00341—J. Ronnie Greer, District Judge.

Argued: September 13, 2007

Decided and Filed: November 13, 2007

Before: MARTIN, GUY, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Carrollyn C. Cox, COX & COX, Virginia Beach, Virginia, Christopher H. Howard, SCHWABE, WILLIAMSON & WYATT, Seattle, Washington, Todd A. Shelton, ROGERS, LAUGHLIN, NUNNALLY, HOOD & CRUM, Greeneville, Tennessee, for Defendants. H. Mark Stichel, GOHN, HANKEY & STICHEL, Baltimore, Maryland, for Plaintiffs. **ON BRIEF:** Carrollyn C. Cox, COX & COX, Virginia Beach, Virginia, Jerry W. Laughlin, ROGERS, LAUGHLIN, NUNNALLY, HOOD & CRUM, Greeneville, Tennessee, Howard E. Jarvis, WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, Knoxville, Tennessee, H. Scott Reams, TAYLOR, REAMS, TILSON & HARRISON, Morristown, Tennessee, for Defendants. H. Mark Stichel, GOHN, HANKEY & STICHEL, Baltimore, Maryland, for Plaintiffs.

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Circuit Judge.  This Court is faced with the unenviable task of deciphering what would surely be an excellent law school exam question in first-year civil procedure.  Liberty Life Assurance of Boston and Sun Life Assurance Company of Canada filed the present interpleader and declaratory relief action in order to determine who was due annuity payments originally received by the decedent, Lloyd Gilbert.  Gilbert's ex-wife, Irene Wolff, claims she is due the annuity payments based on her separation agreement with Gilbert.  A loan company, Singer Asset Finance Company, claims it loaned Gilbert a substantial sum of money in exchange for a security interest in Gilbert's annuity payments.  Finally, Gilbert's daughter, Stephanie Muschlitz, is the named beneficiary on the annuity.  We believe the district court correctly decided the numerous legal issues and did not abuse its discretion in weighing the equities, and accordingly affirm its decision.

I.

The district court adequately set out the facts in its order granting summary judgment to Stephanie Muschlitz:

> The decedent, Lloyd Gilbert ("Gilbert"), was injured in an accident November 24, 1992, and subsequently filed a lawsuit in the Circuit Court for the City of Virginia Beach, Virginia, in an effort to recover damages for his personal injuries suffered as a result of the accident.  The defendants in the Virginia action were insured by Liberty Mutual Insurance Company ("Liberty Mutual") and, in 1995, [Gilbert] entered into a negotiated settlement of his claims.  The Settlement Agreement and Release ("the [Settlement] Agreement") entered into between Gilbert and Liberty Mutual provided for an immediate cash payment to Gilbert of $107,000 plus periodic payments of $666 per month for thirty six years commencing November 25, 1995.

> The [Settlement] Agreement provided that Liberty Mutual could make a qualified assignment of its liability to make the agreed upon periodic payments, within the meaning of Section 130(c) of the Internal Revenue Code.  Liberty Mutual then made such an assignment to Keyport Life Insurance Company ("Keyport").  The [Settlement] Agreement further provided that Liberty Mutual or its assignee could satisfy its obligations under the settlement agreement through the purchase of an annuity.  Keyport did, in fact, purchase an annuity from Liberty Life.  Keyport is the owner of the annuity and the annuity payments were directed to Gilbert to meet Liberty Mutual's liability to Gilbert for the agreed upon periodic payments.  The [Settlement] Agreement further provided that Gilbert does not have the power to "sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise."  The original [Settlement Agreement] provided that upon the annuitant's (i.e. Gilbert's) death, payments would be made to the annuitant's estate, but the annuitant was permitted by the terms of the [Settlement Agreement] to change the beneficiary by written request during the annuitant's lifetime.

> At the time of Gilbert's injuries in 1992, he was married to Wolff.  During the course of Gilbert's personal injury lawsuit, Gilbert and Wolff determined to be divorced and entered into a handwritten [separation] agreement dated June 29, 1995, which purports to obligate Gilbert to pay certain amounts to Wolff "if and when I

receive any compensation for the accident dated 11/24/92." Wolff and Gilbert were apparently divorced on June 10, 1999, and the Court's decree incorporated and ratified the June 29, 1995 agreement between Gilbert and Wolff.

On March 22, 1999, Gilbert entered into a "Loan Application and Loan Agreement," with Merrick Bank pursuant to which Gilbert received $51,105.00. In the loan agreement, the defendant/counter plaintiff, Singer Asset Finance Company, is listed as the "processing agent." Singer is also Merrick Bank's assignee of the loan agreement. In the agreement, Gilbert agrees to repay the "loan," in 240 monthly payments of $666.00 each, commencing on May 25, 1999 and concluding on April 25, 2019.

As required by the loan agreement, Gilbert pledged and granted a security interest to Merrick Bank [– subsequently assigned to Singer –] in the periodic payments to which he was entitled under the settlement agreement and annuity contract. UCC-1 financing statements were filed in North Carolina and Tennessee in an effort by Singer to perfect its security interest in the collateral (i.e. the periodic payments). Gilbert also executed an irrevocable durable power of attorney appointing Singer as his attorney-in-fact, granting Singer sole and absolute rights to deal with the periodic payments, including the right to change the beneficiary designation. Gilbert, also pursuant to the loan agreement, opened a bank account with Wachovia Bank, directed his annuity payments to said account, and gave Singer power of attorney to access deposits made to said bank. Gilbert further notified Liberty of a change of address to a post office box which, though being in the name of Gilbert, was controlled by Singer. When Gilbert entered into the loan transaction, Singer sent to the attorney for Gilbert's ex-wife, Irene Wolff, a check in the amount of $3,015.84. The cover letter sent with the check indicates that it "represents payment of garnishment per agreement dated 6/29/95 on the above referenced account." The account referenced is the case number for the divorce of Gilbert and Wolff.

Other than the handwritten agreement between Gilbert and Wolff dated 6/29/95, Gilbert never executed any documents to assign the receipt of any proceeds to Wolff. When Wolff did not receive any further payment from Gilbert, she filed a motion to show cause against him in the Circuit Court of the City of Virginia Beach on December 8, 2000. Gilbert failed to appear for the show cause hearing, and on August 10, 2001, an Amended Judgment Order was entered in the divorce case, granting Wolff judgment against Gilbert in the amount of $34,947.61, plus $1,260.00 in attorneys fees and costs of $83.48. A garnishment summons was issued on December 18, 2001 and served on Liberty Life, and Liberty Life, in its February 20, 2002, answer to the garnishment summons, notified the Circuit Court of its intention to "withhold from Mr. Gilbert any monthly periodic payments which become due under the Policy following receipt of the Garnishment Summons until further notice from the court."

On December 29, 2000, despite his agreement with Merrick (and Singer), Gilbert requested that Liberty Life change the beneficiary on his annuity to his daughter, Stephanie Muschlitz. By letter dated November 12, 2001, Liberty Life acknowledged the change of beneficiary designation to the annuity. Gilbert died on September 23, 2003. No probate estate has been opened for Gilbert.

Gilbert made all required payments to Singer under the loan agreement until February 2002, except for the payments for September and October, 2001. He made

no payments after February, 2002. On May 10, 2002, Singer filed suit against Gilbert in the Chancery Court for Hancock County, Tennessee seeking judgment against Gilbert "in an amount not to exceed $150,000" and for an injunctive relief prohibiting Gilbert from exercising dominion over the periodic payments. Singer's state court complaint stated causes of action based on theories of breach of the loan agreement, conversion and unjust enrichment against Gilbert. An amended complaint added Keyport as a party defendant and sought injunctive relief and declaratory relief. Liberty Life filed this action in the Court on November 18, 2002, to determine to whom annuity benefits are payable, Wolff and Singer having both notified Liberty Life of claimed entitlement to a portion of the annuity payments, and Muschlitz laying claim to the entirety of the annuity payments as Gilbert's beneficiary.

The district court granted summary judgment in favor of Muschlitz, as discussed below. In its July 6, 2006 Order, the district court ordered an accounting of the payments made by Liberty into the district court's escrow account to determine which payments were made before Gilbert's death, and which were made after. The payments made before his death were ordered payable to his estate, and those made after were ordered payable to Muschlitz, as the named beneficiary upon Gilbert's death.

## II.

### 1.    Standard of Review

We review a district court's grant of summary judgment de novo. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir.1996). Summary judgment is appropriate if, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Additionally, this Court must construe the facts and draw all inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 478 U.S. 574, 587-88 (1986). At the outset, Singer argues that the district court applied the wrong standard of review when it stated in its order that the court must "construe the evidence in the record most favorably for the moving parties." This was obviously a typographical error, as both immediately before and after the above-quoted language, the district court stated the proper standard that all facts and inferences would be drawn in favor of the non-moving party. Our review of the district court's order does not reveal that any inferences were drawn or facts were construed in favor of a moving party; rather, the district court analyzed all three parties' summary judgment motions and statements of undisputed facts in accordance with the proper summary judgment standard.

### 2.    Wolff's Claims

Wolff argues that the handwritten 1995 separation agreement between herself and Gilbert created an "equitable assignment of [the] anticipated proceeds from his personal injury action." She further argues that the subsequent incorporation of the agreement into the Virginia Beach Circuit Court's divorce decree "imposes [an] equitable lien upon the annuity."

The district court found that Wolff's claim fails for the simple reason that in order for Gilbert's assignment to be effective, under Virginia law he must have had "a present ownership of the subject matter of the assignment to the assignee," and Gilbert did not have a present ownership interest in any proceeds from his personal injury action at the time of the 1995 settlement agreement.

The district court further held that once Wolff "sought to enforce the agreement through the contempt proceedings in the Virginia court, any contractual remedy she may have had under the original agreement . . . was reduced to a judgment, and her contractual rights cannot serve as a basis for her claim to the annuity payments." Accordingly, the district court found that Wolff has no claim to the annuity payments vis-a-vis the alleged assignment in the 1995 separation agreement, but rather stands in the shoes of an unsecured judgment creditor of Gilbert. The district court then held that because Virginia law precludes proceeds derived from settlement of a personal injury suit from the creditor process, Wolff has no legal claim to the annuity payments.

Wolff argues that Virginia law states that an agreement to assign property not yet in ownership constitutes an equitable lien. While this may be true in certain instances, her argument misses the point. Rather, the district court found no language in the divorce settlement agreement "that even suggests an attempted assignment." The district court found that the divorce settlement agreement created an obligation on the part of Gilbert to pay certain agreed upon sums to Wolff, contingent on Gilbert's receipt of compensation from his personal injury action, but did not specifically assign any rights in the periodic payments to Wolff.

We find the district court was correct in holding that no assignment occurred. Gilbert did not manifest an intent to transfer ownership of the settlement proceeds, or his right to the settlement proceeds, to Wolff in the separation agreement. Rather, he merely promised to pay a sum of money to Wolff, contingent on his receiving compensation for his personal injury action. Such a promise does not amount to an equitable assignment. *See S.L. Nusbaum & Co. v. Atlantic Virginia Realty Corp.*, 146 S.E.2d 205, 210 (Va. 1966) ("a mere promise or agreement to pay a debt out of a designated fund, . . . does not give an equitable lien upon the fund, or operate as an equitable assignment of it." (internal citations omitted)).

Additionally, under Virginia law, one may only assign a future anticipated benefit or obligation that is presently owned, i.e., under contract. *See Edmunds v. CVC Enterprises, Inc.*, 544 S.E.2d 324, 326-327 (Va. 2001). When the separation agreement was entered into, Gilbert had not contracted with Liberty for the settlement of his personal injury case; he was still in the position where he may not have received anything in compensation for his personal injury action. Accordingly, no assignment, equitable or otherwise, occurred between Gilbert and Wolff regarding the structured settlement of his personal injury lawsuit.

As the district court properly held, when Wolff enforced the divorce decree through the contempt power of the Virginia court, she became a judgment creditor of Gilbert. Unfortunately, Wolff's attempt at enforcing her judgment against Gilbert through garnishment of his annuity payments under the structured settlement are disallowed under Virginia law. VA. CODE ANN. § 34-28.1 (exempting proceeds from personal injury actions from creditor process).

We therefore affirm the district court's finding that Wolff does not have a valid legal claim to Gilbert's annuity payments.

### 3.    Singer's Claims

The district court held the loan transaction between Gilbert and Singer to be invalid because (1) Virginia law disfavors factoring transactions; (2) the Settlement Agreement prohibited assignment of the periodic payments; and (3) Gilbert did not have any ownership interest in the annuity policy. We agree with the district court's determination and affirm.

As the lower court correctly found, Gilbert had no ownership interest in the annuity. He is a beneficiary of the annuity which was merely the vehicle for funding the periodic payments agreed to in the settlement agreement between Gilbert and Liberty. Both *In re Granati*, 307 B.R. 827, 830-31 (E.D. Va. 2002), and *Allstate Ins. Co. v. Am. Bankers Ins. Co. of Fla.*, 882 F.2d 856, 859 (4th Cir.

1989), held that a beneficiary of an annuity which the beneficiary does not own, has no legal right in the annuity to assign. Accordingly, Gilbert could not lawfully assign his right to payment under the annuity and Singer had no enforceable security interest in Gilbert's monthly payments. *See also* RESTATEMENT (SECOND) OF CONTRACTS § 321 cmt. d, illus. 7 and 8 (1981).

In addition to not having an ownership interest in the annuity, the settlement agreement between Gilbert and Liberty expressly forbade Gilbert from selling, mortgaging, encumbering, or anticipating the "Periodic Payments," by assignment. The district court correctly found that in signing this Settlement Agreement with Liberty, Gilbert negotiated away his ability to assign his rights to the periodic payments.

Recognizing that there had been no valid legal assignment by Gilbert to Singer, the district court analyzed whether there had been an equitable assignment that could be specifically enforced. The district court determined that Singer had no equitable right to Gilbert's periodic payments. A determination of whether an equitable assignment occurred is within the sound discretion of the district court. *Haythe v. May*, 288 S.E.2d 487 (Va. 1982). We review the district court's equitable determination for abuse of discretion. Under Virginia law, equity will not enforce specific performance of a contract that is "founded in fraud, imposition, mistake, undue advantage, or gross misrepresentation, or where . . . it would be unconscientious to enforce it." *Allstate Ins. Co.*, 882 F.2d at 860 (quoting *Clay v. Landreth*, 45 S.E.2d 875,879 (Va. 1948)).

In weighing the equities, the district court looked to all of the facts and circumstances of the transaction. The district court recognized that Singer provided significant consideration to Gilbert in exchange for his annuity payments. But it was also apparent to the district court that the elaborate scheme devised by Singer — e.g., Gilbert's signing a power of attorney in favor of Singer, Gilbert changing his address to a Post Office box under Singer's sole control, and Gilbert's opening a bank account and giving Singer sole control of it — evidenced the fact that Singer was aware the annuity was non-assignable and used deceptive practices to obtain an assignment of the annuity contract without Liberty's knowledge. As the court in *Granati* stated, "it strains credulity to believe that [Singer], which is fully engaged in the business of purchasing annuity contracts, believe[d] that it was purchasing the annuity rights directly from [Gilbert]. . . . Rather, it is evident that [Singer] knew that its purported assignment from [Gilbert] rested on dubious legal grounds, and so it implemented the many measures detailed above as part of a concerted, and frankly less than forthright efforts to assure success of the contract." *Granati*, 307 B.R. at 831-32.

The district court also noted that Virginia law presently forbids factoring transactions unless approved by a court or other administrative body. *See* VA. CODE ANN. § 59.1-475 *et seq.* (Virginia Structured Settlement Protection Act). This law was not enacted at the time of the Gilbert-Singer transaction, but as the district court found, it is indicative of Virginia's public policy disfavoring factoring transactions. While we could find no cases discussing Virginia's public policy towards these types of transactions prior to the passage of the Virginia Structured Settlement Protection Act, it was not unreasonable for the district court to look to the Act as evidence of a policy that does not favor them. Accordingly, it was within the district court's discretion to include Virginia's stance against factoring transactions when weighing the equities.

We believe the district court did not abuse its discretion when it weighed the equities and ruled against Singer. Not only was the transaction legally invalid, but Virginia public policy disfavors such transactions, and Singer was aware of these facts when it entered into the transaction. As the *Granati* court rhetorically asked: "why a party, who employs deceptive means to shore the foundation of a contract it suspects may be of questionable validity, should have its duplicitous bargain saved by the tools of equity?" *Granati*, 307 B.R. at 832; *see also Allstate*, 882 F.2d at 860.

### 4.    Muschlitz's Claims

The district court determined that Gilbert's daughter, Stephanie Muschlitz, was entitled to the proceeds of the annuity as the named beneficiary on the policy.

Singer argues that Muschlitz does not have standing to enforce the settlement agreement because she was not an intended beneficiary, but rather an incidental beneficiary. This is completely inaccurate. Paragraph four of the settlement agreement clearly contemplates Gilbert having an identified beneficiary, and provides the process for naming such beneficiary. As such, the district court was correct in holding that she had standing to enforce the settlement agreement. *See Levine v. Selective Ins. Co. of Am.*, 462 S.E.2d 81, 83 (Va. 1995) ("the essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." (internal quotations omitted)).

The only other issue presented is the fact that Gilbert named Muschlitz as his beneficiary after he had entered into his agreement with Singer, including executing a power of attorney giving Singer sole authority to make beneficiary designations under the policy.[1] The district court held that because it had already found the Singer transaction to be legally invalid — including the power of attorney, which the district court found to be part of the underhanded practices Singer employed to consummate the transaction — and that the equities did not favor specifically enforcing the agreement, the fact that the Singer transaction occurred before Muschlitz was named Gilbert's beneficiary is of no consequence. That decision was not in error.

### III.

We hold that the district court properly found that the separation agreement between Gilbert and Wolff was not an assignment of Gilbert's right to receive periodic payments under the settlement agreement and that the annuity payments are exempt from Wolff's garnishment action under Virginia law. We also hold that the district court properly found that the Gilbert-Singer transaction was legally invalid and against the public policy of Virginia. Additionally, the district court did not abuse its discretion in deciding the equities did not weigh in favor of specifically enforcing the transaction. Finally, because Wolff has no right to the annuity payments and the Singer transaction was legally invalid and not equitably enforced, Muschlitz is entitled to the annuity payments as the named beneficiary under the settlement agreement in accordance with the district court's order of July 6, 2006.

---

[1]Singer also raises in its brief the argument that Article 9 of the UCC voids the anti-assignment language of the settlement agreement. Because it does not appear that this argument was presented to the district court, the argument is waived.